EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor L. Santiago Nieves<br><br>    Peticionario<br><br>        v.<br><br>Braulio Agosto Motors, Inc. et al.<br><br>    Recurridos | Certiorari<br><br>2017 TSPR 24<br><br>197 DPR ____ |

Número del Caso: AC-2014-31

Fecha: 14 de febrero de 2017

Tribunal de Apelaciones:

    Región Judicial de Bayamón

Abogado de la Parte Peticionaria:

    Lcdo. Manuel Porro-Vizcarra
    Lcda. Myrmarie Laborde Vega

Abogado de la Parte Recurrido:

    Lcda. María Eugenia Santori Aymat
    Lcda. Debbie E. Rivera Rivera

Materia: Derecho Laboral: Alcance de la Ley Núm. 115-1991. No disponibilidad de una acción independiente del empleado agraviado contra el agente del patrono que ejecutó los actos de represalia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor L. Santiago Nieves

    Peticionario

        v.                  AC-2014-0031

Braulio Agosto Motors, Inc. et al.

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 14 de febrero de 2017.

Nos corresponde aclarar el alcance de un estatuto de naturaleza laboral que, a pesar de ser aplicado profusamente en nuestra jurisdicción, carece de una interpretación uniforme. Específicamente, debemos interpretar si la Ley Núm. 115-1991, <u>infra</u>, contempla la imposición de responsabilidad personal sobre los agentes de un patrono. Un examen integral de esa legislación demuestra que su objetivo es que aquellos empleados agraviados por la conducta proscrita en la que incurre su patrono tengan una causa de acción en su contra. De este modo, según expuesto a continuación, precisamos que la mención de los

agentes dentro de la definición de "patrono" es solamente a los fines de reconocer la responsabilidad vicaria de este último por los actos de los primeros. No se extiende a crear una causa de acción directa contra los agentes en su carácter personal.

I

El Sr. Héctor Santiago Nieves presentó una querella al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185(a), et seq., la Ley Núm. 115-1991, infra, los Arts. 1802 y 1803 del Código Civil, 31 LPRA secs. 5141 y 5142, y la Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118, contra los recurridos Braulio Agosto, Inc., su dueño, el Sr. Braulio Agosto Vega y, su presidenta, la Sra. Norma Agosto Flores. El señor Santiago Nieves relató que laboró como Gerente General y Consultor en Braulio Agosto, Inc., desde el 1 de enero de 2011 hasta el 25 de junio de 2012. Sostuvo que a principios de 2012, colaboró con una auditoría que realizó el Departamento de Hacienda sobre las planillas de contribución de la corporación y el impuesto sobre ventas y uso (IVU).

Expresó que tras la referida auditoría, el Departamento de Hacienda emitió un informe preliminar a través del cual le impuso una penalidad de $373,092.40 a Braulio Agosto, Inc., por las deficiencias encontradas. Como resultado, según afirmó, la señora Agosto Flores y el señor Agosto Vega se reunieron el 21 de junio de 2012 con él y le expresaron, entre otras cosas, su disgusto por la penalidad impuesta por el Departamento de Hacienda, así

como su molestia por la forma en que manejó la información durante la auditoría, y le requirieron remediar el asunto. <u>Alegato de la Parte Peticionaria</u>, pág. 4. Narró que, posteriormente, la señora Agosto Flores le entregó una carta de despido, en presencia del gerente de ventas, y le manifestó que el señor Agosto Vega había decidido relevarlo de sus funciones. Por consiguiente, alegó que fue despedido injustificadamente y como represalia por haber participado de la investigación realizada por Hacienda. Además, solicitó $300,000 por los daños que sufrió.

Por su parte, los recurridos presentaron su contestación.[1] Sostuvieron que el señor Santiago Nieves no participó de la investigación realizada por Hacienda. Asimismo, arguyeron que este, como parte de sus funciones, meramente facilitó la documentación e información requerida durante la auditoría. Al mismo tiempo, negaron que Hacienda le hubiese notificado deficiencias e impuesto una penalidad a Braulio Agosto, Inc. Manifestaron que la reunión del 21 de junio de 2012 fue con el único propósito

---

[1] Los recurridos comparecieron de manera especial sin someterse a la jurisdicción del Tribunal de Primera Instancia, pues entendieron que los emplazamientos no se diligenciaron debidamente. Por esto, las partes presentaron varias mociones con respecto a la suficiencia de los emplazamientos y la jurisdicción del foro primario. El Tribunal de Apelaciones resolvió que, independientemente de la suficiencia de los emplazamientos, los recurridos se sometieron de manera voluntaria a la jurisdicción del tribunal al comparecer y presentar defensas. Esta determinación no se cuestionó en el recurso ante este Tribunal, por lo que la controversia sobre los emplazamientos no está ante nuestra consideración.

de discutir la ejecutoria pobre del señor Santiago Nieves. Añadieron que el despido no se realizó en represalia ni en contravención con la Ley Núm. 80, supra, sino que se debió al desempeño laboral deficiente del señor Santiago Nieves.

Así pues, el foro primario notificó una orden en la que le requirió al señor Santiago Nieves que explicara la razón por la cual incluyó como codemandados a la señora Agosto Flores y al señor Agosto Vega en su capacidad personal. El Tribunal de Primera Instancia razonó que en la eventualidad de que se probara la reclamación por despido injustificado y represalias, solamente respondería su patrono Braulio Agosto, Inc. Apéndice, págs. 48-50. Por lo tanto, el señor Santiago Nieves presentó una moción en la cual reconoció que la acción sobre despido injustificado solo podía ser dirigida contra su patrono Braulio Agosto, Inc. No obstante, aclaró que de conformidad con el texto de la Ley Núm. 115-1991, infra, se podía responsabilizar a los agentes del patrono en su carácter personal por actos de represalia. Además, argumentó que la señora Agosto Flores y el señor Agosto Vega le ocasionaron daños, por lo que respondían al amparo del Art. 1802 del Código Civil, supra. Apéndice, págs. 53-55.

En cambio, los recurridos replicaron e hicieron referencia a varias sentencias del Tribunal de Apelaciones y del Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico (Tribunal Federal de Distrito) en las que se interpretó que la Ley Núm. 115-1991, infra, no

dispone una causa de acción personal contra los agentes, oficiales o supervisores de un patrono. Coligieron que la inclusión de los agentes dentro de la definición de "patrono" contenida en la referida ley fue con el propósito de imponerle responsabilidad al patrono por los actos de sus agentes. Los recurridos afirmaron que la reclamación al amparo del Art. 1802 del Código Civil, supra, era improcedente, pues en la querella no se alegaron actuaciones torticeras independientes del despido. Apéndice, págs. 58-63.

Posteriormente, el señor Santiago Nieves presentó una dúplica en la que además de reiterar sus argumentos, hizo referencia, igualmente, a varias decisiones del Tribunal de Apelaciones y del Tribunal Federal de Distrito en las que se concibió que la Ley Núm. 115-1991, infra, sí contempla una acción personal en contra de los agentes de un "patrono".

El 9 de octubre de 2013, el Tribunal de Primera Instancia notificó una sentencia parcial en la que acogió los planteamientos de los recurridos y, en consecuencia, desestimó la acción de despido injustificado, represalias y daños contra la señora Agosto Flores y el señor Agosto Vega en su capacidad individual. Apéndice, págs. 69-70.

Inconforme, el señor Santiago Nieves apeló al Tribunal de Apelaciones. Allí, reiteró sus argumentos en cuanto a la procedencia de la causa de acción al amparo de la Ley Núm. 115-1991, infra, y el Art. 1802 del Código Civil, supra, contra la señora Agosto Flores y el señor

Agosto Vega en su capacidad individual. Por otro lado, los recurridos presentaron su oposición.

El 17 de marzo de 2014, el Tribunal de Apelaciones confirmó el dictamen del foro primario. El foro apelativo intermedio entendió que la inclusión de la palabra "agente" en la definición de "patrono" que provee la Ley Núm. 115-1991, infra, no tiene el efecto de imponer responsabilidad individual a los agentes del patrono. Además, resolvió que cuando existe una ley especial de naturaleza laboral en el contexto del remedio solicitado, como la Ley Núm. 115-1991, infra, en el caso de represalias, no procede la utilización de otros remedios provistos en otras disposiciones generales, tales como los contemplados en el Art. 1802 del Código Civil, supra. Como resultado, concluyó que el foro primario no erró al desestimar tanto la causa de acción presentada al amparo del Art. 1802 del Código Civil, supra, como la causa de acción por represalias contra la señora Agosto Flores y el señor Agosto Vega en su carácter personal. Apéndice, págs. 89-110.

Insatisfecho, el 16 de abril de 2014, el señor Santiago Nieves recurrió ante nos. Reiteró que el Tribunal de Apelaciones erró al concluir que la Ley Núm. 115-1991, infra, no contempla una causa de acción contra los agentes de un patrono y al desestimar la causa de acción al amparo del Art. 1802 del Código Civil, supra. Expedimos el auto de certiorari y tras la comparecencia de ambas partes, el caso quedó sometido para su adjudicación en los méritos.

II

El origen de la Ley Núm. 115-1991, 29 LPRA sec. 194 et seq., está anclado en la noción que germinó durante la década de los años ochenta en torno a que en Puerto Rico era necesario un estatuto que limitara específicamente la facultad patronal de despedir empleados por participar en procesos investigativos de naturaleza gubernamental. Véase Jaime L. Sanabria Montañez, Derecho laboral, 83 Rev. Jur. UPR 697 (2014). Por eso se presentó legislación para disponer que todo empleado que fuere despedido, amenazado u objeto de discrimen en su empleo por ofrecer testimonio ante un foro legislativo, administrativo o judicial tuviera a su alcance una causa de acción contra su patrono. Informe sobre el P. del S. 987 de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos de 22 de junio de 1991, 5ta Sesión Ordinaria, 11ma Asamblea Legislativa, pág. 2. Además, la legislación propuesta buscó crear una acción civil y criminal a favor del empleado, elaborar los remedios que el empleado podría reclamar y delimitar la responsabilidad del patrono. Íd., pág. 3.

Con respecto a las acciones establecidas en la nueva legislación, el informe sobre el Proyecto del Senado 987 de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos reconoció lo siguiente:

> La acción civil que crea la medida faculta al empleado a ser compensado por los daños reales sufridos y angustias mentales, en adición [sic] a lo que dispone la actual ley vigente. Con relación a la partida de salarios dejados de

devengar, **la responsabilidad del patrono** será el doble de la cuantía que se determine causó la violación a la ley. Además, de la acción civil creada, se tipifica como delito grave cualquier violación a las disposiciones de esta ley. Ambas acciones conceden una efectiva protección a los derechos de los Trabajadores […]. (Énfasis suplido). Íd., pág. 4.

Tras ser aprobada unánimemente por la Cámara de Representantes y el Senado de Puerto Rico, la medida se convirtió en la Ley Núm. 115-1991, supra. La redacción del inciso (a) del Art. 2, 29 LPRA sec. 194a, dispuso que:

**Ningún patrono podrá** despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. (Énfasis suplido).

A su vez, en el inciso (b) del mismo artículo, 29 LPRA sec. 194a, se reconoció que

[c]ualquier persona que alegue una violación a esta ley podrá instar **una acción civil en contra del patrono** dentro de tres (3) años de la fecha en que ocurrió dicha violación y **solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios** y honorarios de abogado. La **responsabilidad del patrono** con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones. (Énfasis suplido).

Como consecuencia, en nuestro ordenamiento jurídico quedó proscrito que un patrono tome represalias contra un empleado suyo que ofreció información en un proceso legislativo, judicial o administrativo. Es decir, se

depositó en el patrono la obligación de no incurrir en los actos antijurídicos estatuidos. Además, se fijó que la acción legal correspondiente para obtener los remedios provistos se insta contra el patrono. A estos efectos, se legisló que el término patrono "significa cualquier persona que tenga uno o más empleados" e "[i]ncluye a los agentes del patrono". Art. 1(b) de la Ley Núm. 115-1991, 29 LPRA ant. sec. 194. Posteriormente, a través de la Ley Núm. 169-2014, la Asamblea Legislativa enmendó la definición de patrono en el Art. 1(b) de la Ley Núm. 115-1991, 29 LPRA sec. 194, para disponer que patrono "[s]ignifica todos los patronos por igual, sean estos patronos públicos o privados, corporaciones públicas o cualquiera otra denominación de patronos que exista en el presente o se cree en el futuro, toda persona natural o jurídica de cualquier índole,[…] y sus agentes y supervisores. […]".

Ante este esquema legal no queda la menor duda de que un empleado agraviado cuenta con una causa de acción contra su patrono, sea este una persona natural o jurídica, por violaciones de la Ley Núm. 115-1991, supra. Sin embargo, la conducta prohibida por esta legislación a menudo se despliega a través de actos cometidos por los agentes del patrono durante el ejercicio de sus funciones. La controversia planteada hoy nos requiere precisar qué alcance tiene la mención de los agentes en la definición de "patrono" para fines de esta legislación.

A pesar de que el historial legislativo de la Ley Núm. 115-1991, _supra_, es copioso con respecto a la política pública que inspiró su adopción, al mismo tiempo, está huérfano de expresiones puntuales que arrojen luz sobre esta interrogante. No empece lo anterior, un análisis integral revela el verdadero alcance del estatuto. La estructura y el contenido de la legislación de represalias demuestran que la intención de la Asamblea Legislativa no fue imponer responsabilidad individual a los agentes de un patrono. En otras palabras, la alusión a los agentes no crea, ni instituye, una causa de acción adicional e independiente contra estos en su capacidad individual.

Con la premisa de que es el patrono quien devenga mayores beneficios de la actividad de sus empleados y, a su vez, quien controla el ambiente de trabajo, en Puerto Rico se han promulgado leyes que imponen responsabilidad civil sobre los patronos por los actos ilícitos de sus agentes, empleados gerenciales o supervisores. La Ley Núm. 115-1991, _supra_, se ajusta, precisamente, a ese modelo legislativo. La finalidad de incluir en la definición de "patrono" de la Ley Núm. 115-1991, _supra_, tanto al empleador como a sus agentes fue a los fines de responsabilizar vicariamente al patrono por las actuaciones de sus agentes. De este modo quedó eliminada explícitamente la posibilidad de que los patronos de los empleados que sufrieran represalias pudieran invocar en su

defensa que no fueron ellos sino sus agentes quienes cometieron tales actos.

Distinto a dos de las legislaciones analizadas por este Tribunal en Rosario v. Distribuidora Kikuet, 151 DPR 634 (2000), la Ley Núm. 115-1991, supra, no contiene una disposición de la cual se pueda derivar la intención legislativa de responsabilizar personalmente a los agentes de un patrono. En aquella ocasión, al interpretar la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146 et seq., la Ley Núm. 69 de 6 de julio de 1985, 29 LPRA sec. 1321 et seq., y la Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155 et seq., determinamos que la responsabilidad civil allí establecida no se limita al patrono sino que los agentes también responden en su carácter personal por sus propios actos. Rosario v. Distribuidora Kikuet, supra, pág. 644.

En el caso particular de la Ley Núm. 17, supra, este Tribunal resaltó que el legislador dispuso en el Art. 11, 29 LPRA sec. 155j, que "[t]oda persona responsable de hostigamiento sexual en el empleo, según se define en [los artículos 1 al 13 de] esta [L]ey, incurrirá en responsabilidad civil[…]". Rosario v. Distribuidora Kikuet, supra, pág. 645. Como resultado, según se desprende de la disposición precitada, la responsabilidad civil no se circunscribió al patrono sino que se extendió a toda persona responsable de la conducta en cuestión. Íd.

Ahora bien, con respecto a la Ley Núm. 69, supra, y la Ley Núm. 100, supra, este Tribunal no detalló artículos

homólogos para llegar a esa misma conclusión. No obstante, el Art. 21 de la Ley Núm. 69, 29 LPRA sec. 1341, reconoce expresamente que toda persona, patrono u organización que violente sus postulados incurrirá en responsabilidad civil y criminal.

Esto demuestra que cuando la Asamblea Legislativa ha querido extender la responsabilidad civil más allá del patrono así lo ha dispuesto expresamente. El lenguaje utilizado en la ley de represalias es diferente al de otras legislaciones laborales en las que el legislador creó una causa de acción contra cualquier persona que incurre en la conducta proscrita y no solo contra el patrono.

En este sentido, encontramos un contraste de política pública al comparar el esquema y los propósitos distintivos que encarnan la ley de represalias con los de la ley para prohibir el hostigamiento sexual en el empleo. La represalia en sí no constituye un acto por el cual se pueda responsabilizar bajo la Ley Núm. 115-1991, supra, a un agente que no ostenta poder sobre la situación laboral del empleado agraviado. Según este estatuto, la represalia se compone del despido, el discrimen y la amenaza con relación a los términos y condiciones del empleo. En ese sentido, cuando el agente de un patrono despide, discrimina o amenaza a un compañero empleado con respecto a la compensación, beneficios o privilegios de su plaza lo que ejerce es la autoridad del patrono. Recordemos que, en

última instancia, es el patrono quien tiene el poder de decidir la condición laboral de un empleado.

Distinta es la situación en escenarios de hostigamiento sexual. En ese supuesto, un agente, así como cualquier otra persona en el lugar de trabajo, tiene la capacidad de hostigar sexualmente a otros empleados sin importar los poderes o las funciones que ostente su cargo. Es por esto que la Asamblea Legislativa estatuyó un modelo distinto al momento de imponer responsabilidad civil en la Ley Núm. 17, supra, y la Ley Núm. 115-1991, supra. Así, al prescribir quiénes incurren en responsabilidad civil por hostigamiento sexual según la Ley Núm. 17, supra, se designó a "toda persona", mientras que en la Ley Núm. 115-1991, supra, de represalias se aludió a "todo patrono". Esta última ley no reconoce una causa de acción adicional e independiente contra el agente de un patrono.

## III

Aunque no es de por sí determinante, el tratamiento brindado en la esfera federal a las legislaciones laborales *Title VII del Civil Rights Act* de 1964, 42 USC secs. 2000e-2000e-17, y *Age Discrimination in Employment Act* de 1967 (ADEA), 29 USC secs. 621-634, influye en nuestro razonamiento. A pesar de la diferencia entre estas leyes federales y la Ley Núm. 115-1991, supra, la interpretación brindada a las primeras resulta ilustrativa para interpretar la segunda. Todas comparten la misma estructura de redacción al definir el término "patrono" y el tema sobre la imposición de responsabilidad civil a los

agentes del patrono en su carácter personal ha sido objeto de amplia discusión.

La definición de patrono del Título VII, prácticamente idéntica en la ADEA, dispone que este es "una persona dedicada a una industria que afecta el comercio y tiene quince o más empleados[…], así como cualquier agente de esa persona[…]". 42 USC sec. 2000e(b)(Traducción nuestra).[2]

Una creciente mayoría de los tribunales federales ha interpretado que la inclusión de los agentes en la definición de patrono, es una referencia a la doctrina de responsabilidad vicaria, insertada en la ley para garantizar que los actos de los empleados individuales sean imputables al patrono. Harry P. Ting, Who's the Boss: Personal Liability under Title VII and the ADEA, 5 Cornell J.L. & Pub. Pol'y 515, 522 (1996). Además, han sostenido que las legislaciones de naturaleza laboral no están dirigidas a conceder remedios a los empleados contra personas individuales, sino contra sus patronos. Íd. Así, la vasta mayoría de los tribunales federales de apelaciones que han considerado esta controversia bajo el Título VII y la ADEA han resuelto que no procede la

---

[2] "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees[…], and any agent of such a person[…]."

imposición de responsabilidad civil sobre los agentes en su carácter personal. Íd.[3]

Consecuentemente, la visión que predomina en el sistema federal es que un agente ofensor no puede ser considerado responsable en su carácter personal bajo la definición de patrono en el Título VII. Martha Chamallas, Two Very Different Stories: Vicarious Liability Under Tort and Title VII Law, 75 Ohio St. L.J. 1311, 1331 (2014). Este tipo de legislación está estructurada para imponer responsabilidad a los patronos, quienes están obligados a velar por el comportamiento de su empleomanía, y no a individuos particulares. Íd.

Estos principios fueron invocados por los peticionarios en el caso de Rosario v. Distribuidora Kikuet, supra, para argüir que no procedía atribuirles responsabilidad en su capacidad individual. No obstante, este Tribunal razonó, someramente, que como la legislación federal aplicaba exclusivamente a patronos con quince o

---

[3] Véanse: Fantini v. Salem State Coll., 557 F.3d 22, 30 (1er Cir. 2009); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-1316 (2do Cir. 1995); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077-1078 (3er Cir. 1996); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4to Cir. 1998)(donde se señala que "todos los circuitos que se han enfrentado a este problema[…] han rechazado las reclamaciones de responsabilidad personal"); Grant v. Lone Star Co., 649 F.2d 1084, 1099 (5to Cir. 1981); EEOC v. AIC Security, 913 F.2d 398, 404 (7mo Cir. 1990); Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377, 381 (8vo Cir. 1995); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587-88 (9no Cir. 1993); Hayes v. Williams, 88 F.3d 898, 901 (10mo Cir. 1996); Busby v. City of Orlando, 931 F.2d 764, 772 (11mo Cir. 1990); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

más empleados y nuestra legislación era "mucho más abarcadora", el razonamiento de las decisiones federales no era aplicable en nuestra jurisdicción. Íd., pág. 644.[4]

                              IV

    La interpretación que adoptamos es la que mejor logra una lectura integrada, lógica y razonable de la pieza legislativa. Además, adelanta sus propósitos y su política pública con menos disrupción en el ambiente laboral y empresarial de Puerto Rico. Con esa interpretación, se

---

[4] Según se puede discernir, la definición de patrono del Título VII difiere de aquella provista en el Art. 1(b) de la Ley Núm. 115-1991, supra, en cuanto a la cantidad de empleados que debe poseer el patrono y con respecto a que la industria que este ejerce debe relacionarse con el comercio interestatal. No obstante, estas diferencias surgen por dos razones fundamentales dentro del esquema político federalista que poco tienen que ver con el propósito social y remedial de este tipo de legislación. En primer lugar, se tuvo la intención de relacionar el alcance del Título VII al comercio interestatal para que su adopción estuviera dentro de los poderes limitados del Congreso. Janice R. Franke, Does Title VII Contemplate Personal Liability For Employee/Agent Defendants?, 12 Hofstra Lab. L.J. 39, 59 (1994). Por otro lado, se circunscribió el alcance de la ley para que su cumplimiento no afectara las operaciones de los negocios pequeños. Íd.

    No hay ninguna razón de peso para interpretar las diferencias en ambas definiciones como algo más que una restricción en el alcance del tipo de legislación que el Congreso puede imponer bajo los poderes que le concede la Cláusula de Comercio de la Constitución de Estados Unidos y como una excepción de política pública para favorecer a las empresas pequeñas. Íd. Estas diferencias en la legislación federal no pueden servir de base para sentenciar tajantemente que su razonamiento no tiene inherencia alguna a la hora de interpretar la legislación estatal que cuenta con una redacción prácticamente idéntica. Nótese que aunque el patrono se define como un empleador de quince personas o más, en las leyes federales, o un empleador de una o más, en la Ley Núm. 115-1991, supra, esto no incide sobre el alcance de la causa de acción contra los agentes pues estos, por definición, no poseen empleados.

guarda deferencia al esquema legislativo adoptado, tras considerar integralmente todo su contexto, y se asegura que la responsabilidad contemplada recae sobre la entidad con la verdadera capacidad de tomar represalias. Asimismo, se protege a nuestros trabajadores cuando estos cooperan con las ramas gubernamentales en sus procesos de investigación sin el temor de que su patrono, por sí o a través de cualquiera de sus agentes, emprenda acciones en su contra. En ese supuesto, el patrono, como sujeto con control pleno sobre la situación laboral del empleado, será responsable bajo la ley por la conducta de sus agentes.

Asimismo, esta lectura del estatuto no lacera el esquema corporativo vigente. Es harto conocido que en nuestro ordenamiento jurídico una corporación tiene su propia personalidad jurídica y su propio patrimonio. "El hecho de que la corporación como ente jurídico solo puede actuar a través de personas naturales, meramente explica una realidad". Véase Sucn. Santaella v. Srio. de Hacienda, 96 DPR 442, 451 (1968). Se ha reconocido ampliamente que esta característica legal que presentan los entes corporativos contribuye grandemente al desarrollo de una economía fuerte. Véase Kenneth W. Dam, Equity Markets, the Corporation, and Economic Development, John M. Olin Program in Law and Economics Working Paper No. 280, 2d Series (2006). Reconocer una causa de acción directamente sobre los agentes por los actos de una corporación desgarraría la personalidad jurídica separada que inviste

la Ley General de Corporaciones de 2009, 14 LPRA 3501 et seq., a los entes corporativos y añadiría mayores obstáculos al desarrollo económico de Puerto Rico.

En fin, tras examinar las disposiciones, la intención y el esquema legislativo de la Ley Núm. 115-1991, supra, concluimos que esta permite que un empleado agraviado presente una acción contra su patrono, por las represalias de este o de sus agentes, pero no provee una causa de acción independiente contra el agente que ejecutó los actos. La inclusión de los agentes en la definición de "patrono" es para reconocer únicamente la imposición de responsabilidad vicaria sobre el patrono.

V

Nos resta evaluar si hay alguna otra disposición general que imponga responsabilidad civil personal a los agentes del patrono.

En SLG Pagán-Renta v. Walgreens, 190 DPR 251, 260 (2014), tuvimos la oportunidad de aclarar que "[c]omo regla general, **ante una conducta de un patrono, prevista y sancionada por una legislación especial de índole laboral,** el empleado s[o]lo tendrá derecho al remedio que dicha ley disponga, sin poder acudir al Art. 1802 del Código Civil". (Énfasis suplido). Por otro lado, reconocimos que la exclusividad de los remedios en estos estatutos "no excluye la responsabilidad civil de un patrono por conducta torticera en que incurriere por otros motivos que no sean la mera violación de una disposición de las leyes

del trabajo". <u>Soc. de Gananciales v. Royal Bank de P.R.</u>, 145 DPR 178, 193 (1998).

Tales pronunciamientos se amparan en el principio de evitar la doble compensación cuando una ley laboral concede al empleado un remedio a su agravio. Esta limitación es aplicable cuando un empleado reclama tanto remedios especiales como generales por la violación a una disposición de naturaleza laboral. No obstante, debemos ser precisos en la relación que en nuestro ordenamiento tienen los remedios establecidos en las leyes especiales de naturaleza laboral y el remedio general provisto en el Art. 1802 del Código Civil, 31 LPRA sec. 5141.

Las leyes laborales no excluyen la responsabilidad que puede tener una persona por conducta torticera independiente no contemplada en el estatuto, al palio del Art. 1802 del Código Civil, <u>supra</u>. Por lo tanto, si la ley de índole laboral no prevé y sanciona la conducta incurrida o esta constituye un acto culposo o negligente autónomo, en ausencia de esa legislación especial, el Art. 1802 del Código Civil, <u>supra</u>, es ejercible plenamente. Es decir, en ese escenario el empleado agraviado puede acudir a los preceptos generales de responsabilidad civil extracontractual contra cualquier persona que haya infringido un deber jurídico de actuar, siempre que una ley especial no lo prohíba. Por supuesto, el empleado que interpele este remedio general para el resarcimiento de sus daños y perjuicios debe probar cada uno de los

elementos de su causa de acción, incluida la conducta culposa o negligente del demandado.[5]

De otra parte, si la ley de índole laboral sanciona la conducta imputada y confiere un remedio al empleado agraviado, no "aceptar[emos] la tesis de que el legislador dejó abierta la puerta a la utilización de algún otro remedio o causa de acción, provista por alguna ley general". SLG Pagán-Renta v. Walgreens, supra, pág. 260.

VI

En este caso, el patrono del señor Santiago Nieves para fines de la Ley Núm. 115-1991, supra, es Braulio Agosto Motors, Inc. Esa entidad sería la responsable si se prueban las reclamaciones incoadas en su contra. La personalidad jurídica de Braulio Agosto Motors, Inc. se mantiene separada de la personalidad legal del señor Agosto Vega y la señora Agosto Flores, accionista principal y presidenta de la corporación, respectivamente. Por consiguiente, al igual que concluyeron los foros inferiores recurridos, no procede la reclamación incoada contra el señor Agosto Vega y la señora Agosto Flores en su capacidad individual bajo la Ley Núm. 115-1991, supra.

Por otro lado, el señor Santiago Nieves alegó, en síntesis, que fue despedido de su empleo sin justa causa y

---

[5] Es menester destacar que en nuestra jurisdicción el despido en sí no es considerado un acto torticero, pues un patrono privado siempre puede despedir a su empleado. Claro está, si lo hace sin justa causa estará sujeto únicamente al pago de una mesada. Véase Romero v. Cabrer Roig, 191 DPR 643, 651 (2014).

como represalia. Así, el señor Santiago Nieves basó su reclamación únicamente en que fue despedido por participar de una investigación del Departamento de Hacienda. Asimismo, las alegaciones que formuló contra los recurridos giran en torno a su participación en el despido, como sus supervisores y agentes de la corporación Braulio Agosto, Inc. Sin embargo, el señor Santiago Nieves no alegó alguna actuación torciera independiente al despido por la que los agentes del patrono puedan responder al amparo del Art. 1802 del Código Civil, supra. En vista de lo anterior, no encontramos justificación para mantenerlos en este pleito y, por lo tanto, procede, desestimar las reclamaciones en su contra, como decretaron correctamente los foros inferiores.

VII

Por los fundamentos expuestos, se confirma la Sentencia del Tribunal de Apelaciones.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Héctor L. Santiago Nieves

    Peticionario

        v.                AC-2014-0031

Braulio Agosto Motors, Inc. et al.

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 14 de febrero de 2017.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió opinión de conformidad en parte y disidente en parte a la cual se unió la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Rivera García disiente y concurre con opinión escrita. El Juez Asociado señor Estrella Martínez disiente con opinión escrita.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor L. Santiago Nieves

 Peticionario

    v.                          AC-2014-0031

Braulio Agosto Motors, Inc.;
Braulio Agosto Vega;
Norma Agosto Flores; Compañía
Aseguradora ABC, John Doe

 Recurridos

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 14 de febrero de 2017.

Desafortunadamente, este Tribunal resuelve erradamente que los agentes, supervisores y representantes de una empresa no están incluidos en la definición de patrono de la Ley Núm. 115-1991, conocida como la Ley de Acción por Represalia del Patrono, 29 LPRA sec. 194 *et seq*.

Asimismo, una Mayoría de este Tribunal dictamina que procede desestimar la causa de acción instada por daños y perjuicios extracontractuales al amparo del Art. 1802 del Código Civil, 31 LPRA sec. 5141. Nuevamente, al hacer esta determinación, la Mayoría de este Tribunal insiste en que los estatutos laborales impiden la utilización de algún

otro remedio o causa de acción provista por otro estatuto. Asimismo, una Mayoría de este Tribunal entiende que no existen reclamos de actos torticeros independientes contra los recurridos.

No comparto el raciocinio de la Mayoría de este Tribunal, por lo que me veo obligado a disentir y reiterar mis posturas disidentes con relación a la posibilidad de ejercer una acción de daños y perjuicios.

I

Los hechos que dan lugar a la controversia ante nuestra consideración están expuestos en la Opinión de este Tribunal. De éstos se desprende que el Sr. Héctor Santiago Nieves instó una reclamación contra Braulio Agosto Motors, Inc., el Sr. Braulio Agosto Vega (señor Agosto Vega), como dueño de la corporación, y la Sra. Norma Agosto Flores (señora Agosto Flores), como presidenta de ésta.

En lo pertinente, el señor Santiago Nieves alegó que la corporación, el señor Agosto Vega y la señora Agosto Flores incurrieron en un despido injustificado y represalias. Asimismo, arguyó que estos últimos le causaron daños y perjuicios con sus acciones intencionales y culposas por razón de las prácticas discriminatorias y en represalias.

Ante el Tribunal de Primera Instancia se suscitó la controversia de si procedía la acción entablada por despido injustificado, represalias y daños y perjuicios contra el señor Agosto Vega y la señora Agosto Flores, en su carácter personal. El foro primario emitió una Sentencia Parcial en la que desestimó con perjuicio las acciones instadas, por entender que

los demandados no podían responder en su carácter personal por represalias ni daños y perjuicios.[6] Esta determinación fue confirmada por el Tribunal de Apelaciones y es el asunto ante nuestra consideración.

---

[6]Adviértase que, en el caso de autos, ante el Tribunal de Primera Instancia se levantó como defensa afirmativa la falta de diligenciamiento del emplazamiento sobre la persona de Braulio Agosto, Inc., el Sr. Braulio Agosto Vega y la señora Norma Agosto Flores. Del expediente, surge que el Sr. Héctor L. Santiago Nieves aceptó no haber emplazado al señor Agosto Vega ni a la señora Agosto Flores. Incluso, solicitó una prórroga para diligenciar el referido emplazamiento. Véase, Moción en Cumplimiento de Orden, Ap Pág. 31. Sin embargo, tanto la solicitud de prórroga para emplazar como la controversia sobre la jurisdicción sobre las partes, **nunca** fueron atendidas por el Tribunal de Primera Instancia, ya que éste procedió a emitir la Sentencia Parcial objeto del recurso ante nos. En ésta, desestimó con perjuicio la reclamación contra los señores Agosto Vega y Agosto Flores al concluir, en los méritos, que no procedía la causa de acción por represalias ni daños y perjuicios contra éstos. **Por consiguiente, en este momento, entendemos que el asunto del debido diligenciamiento no debe ser atendido por este Tribunal.** A su vez, advertimos que las actuaciones de los demandados fueron en todo momento **sin someterse a la jurisdicción del tribunal** y la falta del debido emplazamiento fue traída a la atención del tribunal desde la primera comparecencia de éstos. Además, en cumplimiento con la orden del foro primario, los recurridos presentaron su postura **sin someterse a la jurisdicción y recalcaron la falta de diligenciamiento del emplazamiento.** Tales actuaciones **no** constituyen una sumisión voluntaria explícita ni implícita. La contestación a una demanda o querella en la que se levanta la defensa de falta de diligenciamiento en el emplazamiento como parte de las defensas afirmativas, no puede constituir un acto sustancial que implique una sumisión voluntaria de una parte opera en detrimento de la norma de que se debe cuestionar la falta de jurisdicción en la primera oportunidad. Véase, Cirino González v. Adm. Corrección, *et al.*, 190 DPR 14 (2014).

II

Al analizar las disposiciones contenidas en la Ley Núm. 115-1991, *supra*, este Tribunal descarta que la definición de patrono contenida en el estatuto incluye expresamente a los agentes, supervisores y representantes de una empresa. Véase, Art. 1(b) de la Ley Núm. 115-1991, 29 LPRA sec. 194.

Para arribar a tal conclusión, la Mayoría de este Tribunal expone que la razón de ser de la Ley Núm. 115-1991 era proscribir que se tomen represalias contra un empleado que ofreció información en un proceso legislativo, judicial o administrativo. De igual forma, reconoce que "la conducta prohibida por esta legislación a menudo se despliega a través de actos cometidos por los agentes del patrono durante el ejercicio de sus funciones". Véase, Opinión Mayoritaria a la pág. 9.

Empero, en un ejercicio que descarta la letra clara del estatuto y la intención de erradicar este tipo de conducta del empleo, la Mayoría de este Tribunal concluye que la responsabilidad por represalias excluye a los agentes del patrono al concluir que la referencia estatutaria era sólo a los fines de imponer responsabilidad vicaria al patrono. Asimismo, prescinde del principio de que toda duda en los estatutos laborales requiere una interpretación a favor de la clase trabajadora que se buscaba proteger. *Véanse*, Cordero Jiménez v. UPR, 188 DPR 129, 139 (2013) y casos allí citados; Whittenburg v. Col. Ntra. Sra. del Carmen, 182 DPR 937, 951 (2011).

La extensión y el alcance de la aplicación de la Ley Núm. 115-1991 es incuestionable. Ésta definió el vocablo "patrono" para definirlo como cualquier persona que tenga aunque sea un solo empleado y afirmar que en esa concepción de lo que es un "patrono" se **incluye** a sus agentes. 29 LPRA sec. 194. Las definiciones así contenidas son de gran amplitud en beneficio de establecer una política de protección a los empleados de actos de represalias. Así, lo refleja la intención legislativa que resalta del historial del estatuto.

A estos efectos, hemos expresado que la Exposición de Motivos resalta que el propósito de la legislación es la protección de los empleos de los trabajadores. *Véase,* Cordero Jiménez v. UPR, *supra*, págs. 142-143; 55 Diario de Sesiones de la Asamblea Legislativa (Senado), Procedimientos y debates de la Asamblea Legislativa, P. del S. 987, 24 de junio de 1991, pág. 1924. A su vez, el historial legislativo refleja que el alcance de la medida era extenso. Del Diario de Sesiones resalta que el proyecto tenía como primer propósito ampliar las definiciones de "empleado, "patrono", y "persona" para que se entendiera que aplica a todo empleado, patrono o persona sin distinción de puesto, corporación o entidad. *Véanse*, Cordero Jiménez v. UPR, *supra*; Diario de Sesiones, *supra*, pág. 1926; Diario de Sesiones, Informe de la Comisión del Trabajo, Asuntos de Veterano y Recursos Humanos, *supra*,pág. 1927.

La interpretación avalada por la Mayoría de este Tribunal, se aleja de la intención legislativa que iba dirigida a ampliar quiénes están cobijados por el estatuto así como

quiénes incurren en la conducta proscrita. Tal proceder conlleva la desacertada consecuencia de que, en casos como el de autos, en que agentes del patrono que presiden y son propietarios de la empresa, no están sujetos a represalias a pesar de actuar en contravención a la intención legislativa de erradicar el tipo de conducta que conlleva el despido de un empleado por la posibilidad de participar en procesos investigativos gubernamentales.

Como bien señala el compañero Juez Asociado señor Rivera García en la Parte II de su Opinión Disidente y Concurrente, este Tribunal ha delineado los contornos de un "patrono" en la legislación laboral a los efectos de incluir a los supervisores, oficiales, administradores y agentes del patrono en diversas legislaciones de índole laboral; tales como la legislación en torno a hostigamiento sexual en el empleo, discrimen por razón de sexo, y discrimen en el empleo. Por su parte, la Ley Núm. 115-1991 expresamente incluye a los agentes del patrono en su definición, por tanto entiendo que ésta es oponible a éstos en su carácter personal y no sólo se limita a referir la responsabilidad vicaria que todo patrono tiene sobre su empleado.

Por consiguiente, difiero de la interpretación avalada por una Mayoría de este Tribunal de que esa referencia es a los únicos efectos de imponer responsabilidad vicaria al patrono.

A mi juicio, el señor Agosto Vega y la señora Agosto Flores están sujetos, de probarse, a una acción personal por

represalias en la cual, de incurrir en la referida violación, estarán sujetos a los remedios que provee el referido estatuto.

Por último, disiento de las expresiones avaladas por una Mayoría de este Tribunal a los efectos de prejuzgar si los recurridos son responsables por los daños y perjuicios extracontractuales. La Mayoría de este Tribunal reitera que un empleado a quien se le violenten sus derechos laborales no tiene a su disposición remedios adicionales que las sanciones y compensaciones contenidas en las leyes laborales especiales.

Sobre este particular, insisto en lo expuesto en mi Opinión Disidente emitida en SLG Pagán-Renta v. Walgreens, 190 DPR 251 (2014), a los efectos de que las leyes laborales no constituyen impedimentos para ser acreedores de otros remedios que no fueron contemplados en el estatuto especial. En ausencia de una disposición legal, o cuando una situación jurídica no está confrontada específicamente en la ley especial, se acude a fuentes supletorias, como lo es el Código Civil. Íd., pág. 283. No podemos olvidar que quien produce un daño por su acción u omisión está obligado a resarcirlo, sin limitación ni excepción de clase alguna. Hernández v. Fournier, 80 DPR 93, 96-97 (1957).

Como corolario, estoy impedido de avalar lo expuesto en la Opinión Mayoritaria a los efectos de rechazar remedios compensatorios más allá de los provistos en las leyes laborales. Ello, a pesar de que, en este caso, la Mayoría de este Tribunal concluye que no existe impedimento para la acción de daños y perjuicios contra el señor Agosto Vega y la señora

Agosto Flores al razonar que no le aplican las disposiciones de la Ley Núm. 115-1991, por lo que no vislumbra impedimento para la acción de daños y perjuicios. No obstante, determina que las alegaciones contenidas en el reclamo presentado no aducen actuación torticera independiente al despido al amparo de daños y perjuicios. En ese sentido, debido a la etapa en que se encuentra este caso, opino que no se debe descartar sumariamente la reclamación de daños y perjuicios extracontractuales alegada en la demanda presentada. Las leyes laborales no excluyen la responsabilidad civil que pueda tener una parte por sus acciones y omisiones.

III

Por lo expuesto, disiento de la determinación de este Tribunal con relación a que los agentes, supervisores y representantes del patrono no están sujetos a responder en su carácter personal de incurrir en conducta prohibida por la Ley Núm. 115-1991, *supra*. Igualmente, no estoy de acuerdo con el dictamen de este Tribunal respecto a que procede desestimar la acción del Art. 1802 del Código Civil, *supra*. Por tanto, hubiese devuelto el caso al Tribunal de Primera Instancia para que dilucide **todas** las acciones presentadas por el peticionario.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor L. Santiago Nieves

    Peticionario

      v.                                    AC-2014-0031

Braulio Agosto Motors, Inc. y
otros

    Recurridos

Opinión de conformidad en parte y disidente en parte emitida por la Jueza Presidenta Oronoz Rodríguez a la cual se une la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 14 de febrero de 2017.

Luego de ponderar con detenimiento la norma pautada por una mayoría de este Tribunal y sus respectivos efectos, me veo obligada a disentir.[7] Considero que ante la incertidumbre legislativa que presenta la Ley Núm. 115-1991 este Tribunal está llamado a ejercer una función interpretativa que brinde mayor coherencia, en vez de disonancia, a la normativa laboral vigente.

---

[7] Cabe mencionar que estoy conforme con desestimar la causa de acción al amparo del Art. 1802 del Código Civil, 31 LPRA sec. 5141. Véase SLG Pagán-Renta v. Walgreens, 190 DPR 251 (2014); Soc. de Gananciales v. Royal Bank de P.R., 145 DPR 178 (1998). Por tanto, la discusión de esta Opinión se enfocará en lo relacionado a la Ley Núm. 115-1991.

I

Como se desprende tanto de la Opinión mayoritaria como las disidentes, existe una controversia legítima con relación a cómo las leyes laborales -en este caso la Ley Núm. 115-1991- definen "patrono" a los efectos, por un lado, de quién puede incurrir en conducta legalmente proscrita y, por el otro, quién debe responder civilmente por dicha conducta. En lo pertinente a la Ley Núm. 115-1991, la Opinión mayoritaria concluye que, en vista de que se alude a "patrono" en los artículos que le proveen una causa de acción a la parte agraviada, solo procede imponer responsabilidad vicaria al patrono formal, en vez de a un agente en su carácter personal.[8] Sin embargo, sugiere a su vez que en otras leyes laborales el legislador le impuso responsabilidad tanto al patrono como a la persona que incurra en la conducta proscrita, dado que en artículos homólogos se alude a "toda persona".[9]

---

[8] Véase el Artículo 2 de la Ley Núm. 115-1991, 29 LPRA sec. 194a ("Ningún **patrono** podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley") (énfasis suplido).

[9] Op. Mayoritaria, pág. 11; véase el Artículo 11 de la Ley Núm. 17-1988 (*Ley de hostigamiento laboral en el empleo*), 31 LPRA sec. 155j ("Toda **persona** responsable de hostigamiento sexual en el empleo, según se define en las secs. 155 a 155m de este título, incurrirá en

(continúa...)

A pesar de reconocer que el análisis expuesto por una mayoría de esta Curia es jurídicamente plausible, encuentro dos problemas medulares con su razonamiento. En primer lugar, la definición de patrono en la Ley Núm. 115-1991 es sumamente abarcadora, incluyendo así a los *agentes y supervisores* del patrono.[10] En ese sentido, incluso en aquellos casos en que solo se alude al "patrono" al momento de establecer responsabilidad civil, la propia definición de la ley da margen para concluir que puede ser hallado responsable, no solo el patrono, sino también sus agentes y supervisores. Desde esa perspectiva, no me parece apropiado excluir de responsabilidad a las personas que incurren en la conducta prohibida por la legislatura, máxime cuando este Tribunal ha establecido que procede resolver las dudas en materia laboral a favor del empleado y en pro de la mayor garantía posible de sus derechos. Véase Romero v. Cabrer Roig, 191 DPR 643, 653 (2014); Cordero Jiménez v. UPR, 188 DPR 129, 139 (2013).

---

responsabilidad civil") (énfasis suplido); véase también el Artículo 21 de la Ley Núm. 69-1985 (*Ley de discrimen por razón de sexo en el empleo*), 29 LPRA sec. 1341 ("Toda **persona**, patrono y organización obrera según se definen en este Capítulo, que incurra en cualquiera de las prohibiciones del mismo . . . [i]ncurrirá en responsabilidad civil") (énfasis suplido).

[10] "**Patrono.**- Significa todos los patronos por igual, sean estos patronos públicos o privados, corporaciones públicas o cualquiera otra denominación de patronos que exista en el presente o se cree en el futuro, toda persona natural o jurídica de cualquier índole, incluyendo el Gobierno del Estado Libre Asociado de Puerto Rico, sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él, emplee personas mediante cualquier clase de compensación y **sus agentes y supervisores**". Art. 1 de la Ley Núm. 115-1991, 29 LPRA sec. 194 (énfasis suplido).

En segundo lugar, resulta cuestionable que al momento de procurar erradicar cierta conducta del ambiente laboral, el legislador considere suficiente disuasivo imponerle responsabilidad al patrono solamente, liberando así de los efectos de la ley a la persona que realmente incurrió en dicha conducta. Rosario Toledo v. Distribuidora Kikuet, 151 DPR 634, 644-45 (2000). Más extraño aún sería concluir que el legislador quiso hacerlo así en unas leyes, mas no en otras, cuando en su conjunto se trata de esfuerzos legislativos para garantizar mayores derechos a los empleados y desincentivar en el lugar de trabajo ciertas prácticas ilegítimas o reprochables. Por esa razón, al analizar estas leyes optaría por un enfoque que, no solo se base en el texto de la ley, sino que también cumpla a cabalidad los propósitos eminentemente sociales que le inspiraron. Cordero Jiménez v. UPR, 188 DPR 129, 138 (2013); Irizarry v. J&J Cons. Prods. Co., P.R., Inc., 150 DPR 155, 164 (2000).

II

Tras un análisis sosegado de las disposiciones de la Ley Núm. 115-1991, y en aras de garantizar los objetivos de leyes de esta naturaleza, considero que tanto el patrono formal de un empleado como la persona específica que incurre en represalias pueden y deben responder por los daños ocasionados a la parte agraviada. Una mayoría de este Tribunal opina lo contrario y al hacerlo provoca una incoherencia normativa en perjuicio de aquellos empleados

que procuran remediar la violación de sus derechos.[11] No estoy conforme con dicho proceder y, por eso, disiento.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta

---

[11] Con esto me refiero a la contradicción entre el precedente hoy creado *vis à vis* las expresiones de este Tribunal reconociendo, en el contexto del hostigamiento sexual, una causa de acción personal contra quienes incurran en conducta proscrita bajo las Leyes Núms. 17, 69 y 100. Rosario Toledo v. Distribuidora Kikuet, supra, pág. 648 ("[E]ste Tribunal resuelve que un agente, oficial, administrador o supervisor de una empresa responde civilmente en su carácter personal, a los fines de las Leyes Núms. 17, 69 y 100, en adición al patrono real, por los actos . . . cometidos por él en contra de un obrero o empleado de dicho patrono").

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor L. Santiago Nieves

      Peticionario

         v.            AC-2014-0031

Braulio Agosto Motors, Inc.;
 Braulio Agosto Vega; Norma
  Agosto Flores; Compañía
Aseguradora ABC, John Doe.

      Recurridos

**Opinión Disidente y Concurrente del Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 14 de febrero de 2017.

Hoy la mayoría del Tribunal resuelve erróneamente que la Ley Núm. 115-1991, *infra*, no impone responsabilidad personal sobre los agentes de un patrono. El criterio mayoritario entiende que el objetivo de la ley es disponer que aquellos empleados agraviados por la conducta proscrita de su patrono tengan una causa de acción únicamente contra este. De manera que la definición de patrono no se hace extensiva para crear una causa de acción contra los supervisores, oficiales, administradores y agentes por lo que estos no responden en su carácter personal. Por entender que este curso decisorio es contrario al estado de derecho

**disiento muy respetuosamente de la pauta del dictamen de** la Mayoría. A mi juicio, la Ley Núm. 115-1991 sí establece una causa de acción individual contra los agentes de una compañía que incurran en actos de represalia en contra de algún empleado. Consecuentemente, entiendo que los remedios provistos en dicha Ley son oponibles a todo supervisor, oficial, administrador y agente de una empresa por aquellos actos que estos hayan ejecutado, así como al patrono real del empleado afectado. Conforme a ello y en desacuerdo con la Mayoría, procedo a presentar un breve resumen de los hechos acontecidos en el presente caso, según las alegaciones de las partes.

I

El Sr. Héctor Santiago Nieves (señor Santiago Nieves), comenzó a laborar como Gerente General y Consultor de Braulio Agosto Motors, Inc. el 1 de enero de 2011. A inicios del año 2012, el Área de Rentas Internas del Negociado de Auditoría Fiscal del Departamento de Hacienda (Departamento de Hacienda) auditó a Braulio Agosto Motors, Inc. en relación a sus gestas en torno al Impuesto de Venta y Uso (IVU), para el periodo de enero a diciembre de 2009. Durante este proceso de investigación, el señor Santiago Nieves fue la persona encargada de producir los documentos e información que el Departamento de Hacienda requirió.

El 30 mayo de 2012, el Departamento de Hacienda le notificó a Braulio Agosto Motors, Inc. un informe preliminar en el que le imputó dejar de requerir y retener copia del certificado de exención, u otra documentación que

evidenciara el derecho a la exención del IVU, así como dejar de remitir el referido impuesto.[12] Según alega el señor Santiago Nieves, el informe preliminar señaló que Braulio Agosto Motors, Inc. podía enfrentar multas ascendentes a $373,092.40, como consecuencia de las deficiencias encontradas. El Departamento de Hacienda le concedió a la compañía 5 días para realizar cualquier alegación concerniente al referido informe preliminar.[13]

En respuesta, el señor Santiago Nieves coordinó varias reuniones con los contadores de Braulio Agosto Motors Inc., dirigidas a analizar el contenido del informe preliminar y establecer un plan de acción. De igual forma, este sugirió calendarizar reuniones con los representantes del Departamento de Hacienda para discutir los hallazgos de la investigación y proveerles la información necesaria que le permitiera a la agencia disminuir el monto de las penalidades impuestas.

El 21 de junio de 2012, el Sr. Braulio Agosto Vega y la Sra. Norma Agosto Flores, dueño y entonces Presidenta de Braulio Agosto Motors, Inc. respectivamente, (en conjunto, los recurridos) convocaron una reunión con el señor Santiago Nieves. Aduce este último que durante la reunión los recurridos lo acusaron de haber manejado incorrectamente los procesos ante el Departamento de Hacienda. Asimismo, arguye que le recriminaron que el proceso les costaría mucho dinero y que sería él quien tendría que asumir la responsabilidad y

_____

[12] Véase, Alegato de la Parte Peticionaria, pág. 3.
[13] Íd., págs. 5-6.

las consecuencias de la auditoría.[14] Por su parte, los recurridos aducen que el propósito de la reunión fue discutir el pobre desempeño del señor Santiago Nieves como Gerente General de Braulio Agosto Motors Inc.[15]

Cuatro días más tarde, específicamente el 25 de junio de 2012, la señora Agosto Flores invitó al señor Santiago Nieves a su oficina. Este alega que, una vez allí, la señora Agosto Flores hizo referencia a la reunión del 21 de junio de 2012 y acto seguido le informó que el señor Agosto Vega había decidido relevarlo de sus funciones. Como consecuencia, le entregó una carta de despido, efectivo de manera inmediata.[16]

El 11 de diciembre de 2012, el señor Santiago Nieves presentó ante el Tribunal de Primera Instancia una querella en contra de Braulio Agosto Motors, Inc. y los recurridos, entre otros, por despido injustificado, represalias y daños y perjuicios.[17] En síntesis, alegó que su despedido fue injustificado y en represalia por haber colaborado con la investigación del Departamento de Hacienda. Por ello, reclamó el pago de una mesada de $20,247.99, según el remedio provisto en la Ley Núm. 80 de 30 de mayo de 1976,[18] resarcimiento por los daños y perjuicios sufridos, incluyendo los salarios y beneficios dejados de percibir,

---

[14] Íd., pág. 4.
[15] Véase, Contestación a la Querella, Apéndice del recurso de Apelación, pág. 14.
[16] Véase, Alegato de la Parte Peticionaria, pág. 5.
[17] Véase, Querella, Apéndice del recurso de apelación, págs. 1-8.
[18] 29 LPRA 185a et seq.

así como la reinstalación en su empleo, como lo dispone la Ley Núm. 115-1991,[19] conocida como "Ley de Acción por Represalia del Patrono"; además de solicitar una compensación de $300,000 al amparo de los Artículos 1802 y 1803 del Código Civil.[20]

En su contestación a la querella,[21] los recurridos sostuvieron que el señor Santiago Nieves no colaboró con la investigación realizada por el Departamento de Hacienda, sino que meramente facilitó la documentación e información requerida durante la auditoría. Ello, en el ejercicio de sus funciones como Gerente General de Braulio Agosto Motors, Inc. Agregaron que dicha labor la realizó en conjunto a la Sra. Joseline Álvarez, Gerente de Contabilidad de Braulio Agosto Motors, Inc. y que, al momento de la contestación de la querella, esta continuaba trabajando para la empresa. Asimismo, explicaron que el Departamento de Haciendo no había efectuado ninguna notificación de deficiencias ni le había impuesto penalidad alguna a Braulio Agosto Motors Inc.

---

[19] 29 LPRA Sec. 194 *et seq.*
[20] 31 LPRA 5141 y 5142.
[21] Los recurridos comparecieron sin someterse a la jurisdicción del tribunal. Alegaron que sus emplazamientos no fueron diligenciados conforme a los requisitos de notificación de las Reglas de Procedimiento Civil. Las partes litigaron este particular a través de múltiples mociones ante el foro primario. Sin embargo, al igual que el Tribunal de Apelaciones debemos destacar que, independientemente de la suficiencia en los emplazamientos, los recurridos presentaron una contestación a la querella en la que respondieron las alegaciones en su contra y presentaron defensas afirmativas. Dichos actos constituyeron una sumisión voluntaria de los recurridos a la jurisdicción del foro primario. Véase, Mercado v. Panthers Military Soc., Inc., 125 DPR 98 (1990); Echevarría Jiménez v. Sucn. Pérez Meri, 123 DPR 664, 686 (1989).

Por último, sostuvieron que los asuntos discutidos en la reunión del 21 de junio de 2012 estuvieron relacionados al pobre desempeño y ejecutorias del señor Santiago Nieves. Concluyeron que su despido no fue en represalia ni en contravención a la Ley Núm. 80, *supra*.[22]

Así las cosas, y luego de varios trámites procesales, el 23 de abril de 2013, el Tribunal de Primera Instancia le ordenó al señor Santiago Nieves que explicase por qué demandó a la señora Agosto Flores y al señor Agosto Vega en su carácter personal.[23] El foro primario cuestionó que de probarse que su despido fue injustificado sería su expatrono, Braulio Agosto Motors, Inc., quien debía responderle.[24]

En cumplimiento con la referida orden, el señor Santiago Nieves presentó una moción[25] en la que se allanó al hecho de que su reclamación al amparo de la Ley Núm. 80, *supra*, solo podía ser dirigida en contra de su expatrono, Braulio Agosto Motors Inc. Sin embargo, argumentó que la definición de "patrono" provista en la Ley Núm. 115-1991 incluye a los agentes de este. Razonó, por tanto, que ello implicaba que los agentes de un patrono que tomen represalias en contra de los empleados de la empresa a la que representan, pueden ser demandados en su carácter personal. Además, expresó que la alegada conducta torticera

---

[22] Véase, Contestación a la Querella, Apéndice del recurso de Apelación, págs. 9-20.
[23] Véase, Orden, Íd., págs. 48-50.
[24] Íd.
[25] Moción en Cumplimiento de Orden, Íd., págs. 53-55.

de los recurridos le ocasionó daños que lo hacían acreedor de los remedios provistos por el Artículo 1802, *supra*, por ser independientes a la causa de acción al amparo de las leyes laborales ya enunciadas.

De su parte, los recurridos presentaron una réplica a la moción en cumplimiento de orden[26] del señor Santiago Nieves, en la que discutieron que los remedios provistos en la Ley Núm. 115-1991 son oponibles únicamente al patrono del empleado que reclama y no a sus supervisores, oficiales, agentes, o representantes de este, en su carácter individual. Reconoció que la aducida controversia no había sido atendida por este Tribunal, por lo que sustentó su conclusión en varias sentencias del Tribunal de Apelaciones y del Tribunal Federal para el Distrito de Puerto Rico que resolvieron que la Ley Núm. 115-1991 no provee una causa de acción en contra de los agentes del patrono. Concluyeron que dicho estatuto no impone responsabilidad directa a los agentes, sino que pretende responsabilizar a los patronos por las actuaciones discriminatorias de los representantes de estos. En relación a la reclamación al amparo del Artículo 1802, *supra*, agregaron que no procedía toda vez que el señor Santiago Nieves presentó su querella basándose únicamente en el supuesto despido por represalia. Explicaron que al no existir alegaciones de actos torticeros independientes al despido, los recurridos debían ser excluidos como partes demandadas.

---

[26] Réplica a la Moción en Cumplimiento de Orden, Íd., págs. 58-63.

Ante los argumentos de los recurridos, el señor Santiago Nieves presentó una dúplica[27] en la que resaltó que existían discrepancias entre las determinaciones de distintos paneles del Tribunal de Apelaciones. Del mismo modo, señaló que existían discordancias entre distintas sentencias del Tribunal Federal para el Distrito de Puerto Rico en torno a la controversia que nos ocupa. A modo de ejemplo, citó varias sentencias de ambos foros judiciales en las que se decretó que sí procedía imponerles responsabilidad personal a los agentes de un patrono que violen las disposiciones de la Ley Núm. 115-1991.

El Tribunal de Primera Instancia acogió los planteamientos de los recurridos y, el 9 de octubre de 2013, notificó una sentencia parcial en la que desestimó con perjuicio la reclamación de despido injustificado, represalias y daños y perjuicios en contra de la señora Agosto Flores y el señor Agosto Vega, en su carácter personal.[28]

Oportunamente, el 7 de noviembre de 2013, el señor Santiago Nieves acudió ante el Tribunal de Apelaciones.[29] En sus respectivos escritos, ambas partes reiteraron las posturas hasta ahora descritas en cuanto a las reclamación de una causa de acción al amparo de la Ley Núm. 115-1991 y el Art. 1802 del Código Civil, *supra*, en contra de la señora

---

[27] Dúplica a Réplica a Moción en Cumplimiento de Orden, Íd., págs. 64-68.
[28] Sentencia Parcial, Íd., págs. 69-70.
[29] *Certiorari* ante el Tribunal de Apelaciones, Íd., págs. 74-88.

Agosto Flores y el señor Agosto Vega, en su capacidad individual.

Mediante sentencia que notificó el 17 de marzo de 2014, el foro apelativo intermedio confirmó el dictamen recurrido.[30] Según explicó, la Ley Núm. 115-1991 contempla que la acción por represalia sea presentada únicamente en contra del patrono. Razonó que la represalia que puede ejercerse en contra de un empleado ocurre en el descargo de la función de algún empleado, gerencial, agente o representante del patrono y del interés de este. Por ello, concluyó que la causa de acción al amparo de la Ley Núm. 115-1991 no se extiende a los agentes o representantes del patrono en su carácter personal.

Del mismo modo, declaró improcedente la reclamación de daños y perjuicios al amparo del Artículo 1802 del Código Civil, *supra*. Concluyó que cuando existe una ley especial de tipo laboral en el contexto del remedio solicitado, en ese caso la Ley Núm. 115-1991, no procede la utilización de los remedios provistos en otras disposiciones generales, tales como los contemplados en el Artículo 1802 del Código Civil, *supra*.

En desacuerdo con el dictamen, el 16 de abril de 2014, el señor Santiago Nieves acudió ante esta Curia[31] y alegó que el Tribunal de Apelaciones cometió dos errores. Primero, que erró al concluir que los remedios contemplados en la Ley

---

[30] Sentencia del Tribunal de Apelaciones, Íd., págs. 89-110.
[31] El señor Santiago Nieves acudió mediante recurso de Apelación, el cual acogimos como un *Certiorari* por ser el recurso adecuado.

Núm. 115-1991 no son oponibles a los agentes o representantes del patrono en su carácter personal. Segundo, que fue un error desestimar la causa de acción por daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*.

Expedido el recurso, ambas partes han presentado sus respectivos alegatos. Así las cosas, procedemos a elaborar el marco jurídico aplicable a las controversias reseñadas.

## II

## A

Al momento de interpretar una pieza legislativa, si el lenguaje es claro y libre de ambigüedad, el texto de la ley es la expresión por excelencia de la intención del legislador.[32] Si la letra de la ley es clara, no debe ser menospreciada bajo el pretexto de cumplir su espíritu.[33] Por el contrario, de surgir alguna ambigüedad en el texto del estatuto, el tribunal debe auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa.[34] Así, debe asegurarse de que la interpretación cumple con los propósitos legislativos y atribuye un sentido que asegura el resultado que originalmente se quiso obtener.[35] Del mismo modo, no podemos perder de vista que la interpretación y aplicación de cualquier estatuto debe hacerse en comunión

---

[32] Véanse: Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14; Cordero v. UPR, 188 DPR 129, 138 (2013); S.L.G. Rivera Carrasquillo v. A.A.A., 177 DPR 345, 362 (2009).

[33] Íd.

[34] R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241.

[35] Morales v. Marengo, 181 DPR 852, 859 (2011); Aquino Gonzalez v. A.E.E.L.A., 182 DPR 1, 39 (2011).

con el propósito social que lo inspira, sin desvincularlo de la realidad y del problema humano que persigue resolver.[36] La obligación fundamental de los tribunales, al interpretar una ley, es alcanzar la efectividad de la intención legislativa.[37]

De otra parte, este Tribunal ha reiterado que las leyes laborales son de carácter remedial y tienen un propósito eminentemente social y reparador.[38] Estas sirven como instrumento protector de la clase trabajadora en contra de los actos discriminatorios de sus patronos en el empleo. Es menester que este tipo de legislación sea interpretada de forma liberal, resolviendo toda duda a favor de aquéllos a quienes procura proteger.[39]

**B**

Mediante la aprobación de la Ley Núm. 115-1991, la Asamblea Legislativa promulgó como política pública del Gobierno de Puerto Rico la protección de los empleados frente a las represalias que puede tomar un patrono contra estos por proveer testimonio, expresión o información ante un foro judicial, legislativo o administrativo, para colaborar con dichos foros.[40] El referido estatuto ampara a aquellos obreros que, tras realizar alguna de las

---

[36] Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 938-939 (2010); Pueblo v. Zayas Rodríguez, 147 DPR 530, 537 (1999).

[37] Dorante v. Wrangler of P.R., 145 DPR 408, 417 (1998)

[38] Cordero v. UPR, *supra*, pág. 139; Acevedo v. P.R. Sun Oil Co., 145 DPR 752, 768 (1998).

[39] Whittenburg v. Col. Ntra. Sra. del Carmen, 182 DPR 937, 951 (2011); Jiménez, Hernández v. General Inst., Inc., 170 DPR 14, 41 (2007).

[40] 1991 Leyes de Puerto Rico pág. 957.

actividades protegidas, sean despedidos, amenazados o discriminados en relación a los términos, condiciones, compensaciones, ubicación, beneficios o privilegios de su empleo.[41]

Como remedio a las actuaciones de un patrono que incurre en alguna de las conductas prohibidas, el empleado puede instar una acción civil en contra de dicho patrono dentro de tres (3) años de la fecha cuando ocurrió la violación.[42] La Ley también dispone que el empleado afectado podrá solicitar ser compensado por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y el cobro de honorarios de abogado. Además, establece que la responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley.[43]

En su interés por conferir la mayor protección posible a los trabajadores, el legislador determinó que se impondría "responsabilidad criminal a los patronos que participan en la decisión de despedir a un empleado por [e]ste haber ofrecido testimonio ante los distintos foros

---

[41]    29 LPRA sec. 194(a); <u>Rivera Prudencio v. Mun. de San Juan</u>, 170 DPR 149, 169 (2007).
[42] Artículo 2 de la Ley Núm. 115-1991 (29 LPRA sec. 194a).
[43] <u>Íd.</u> Véase también, <u>Feliciano Martes v. Sheraton</u>, 182 DPR 368, 393 (2011).

investigativos".[44] Cónsono con ello, el Artículo 4 del estatuto, establece que:

Todo patrono que viole cualquiera de las disposiciones de las secs. 194 et seq. de este título incurrirá en delito grave y convicto que fuere, será sancionado con pena de multa no menor de mil dólares ($1,000) ni mayor de cinco mil dólares ($5,000) **y/o pena de reclusión** por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dos (2) años. (Énfasis nuestro).[45]

Según se desprende, la intención expresa del legislador fue que las prohibiciones y los remedios proscritos fueran oponibles al "patrono" del obrero perjudicado. Para aclarar a quién se refiere el término patrono, el Artículo 2 de la Ley Núm. 115-1991, según vigente al momento de los hechos del presente caso, definía patrono como: "**cualquier persona** que tenga uno o más empleados. Incluye a los agentes del patrono".[46]

En el caso de Rosario Toledo v. Distribuidora Kikuet, Inc., 151 DPR 634 (2000), tuvimos la oportunidad de analizar la definición de patrono provista en varios estatutos relacionados a leyes laborales.[47] Luego de analizar el texto de las disposiciones de ley relacionadas al concepto "patrono", resolvimos que los supervisores, oficiales,

---

[44] Exposición de Motivos de la Ley Núm. 115-1991 (1991 Leyes de Puerto Rico pág. 957). (Énfasis nuestro).
[45] 29 LPRA sec. 194b.
[46] 29 LPRA sec. 194 (Edición 2009). (Énfasis nuestro).
[47] Entre estas, la Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155 *et. seq.*, (*Ley de Hostigamiento Laboral en el Empleo*); La Ley Núm. 69 de 6 de julio de 1985, 29 LPRA sec. 1321 *et. seq.*, (*Ley de Discrimen por razón de Sexo*), y la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146, *et. seq.* (*Ley de Discrimen en el Empleo*).

administradores y agentes de un patrono responden en su carácter personal, en adición al patrono real, por sus propios actos de hostigamiento sexual en el empleo. En ese sentido, hicimos extensiva la definición de "patrono" a una persona quien era es patrono real y al mismo tiempo el autor directo de la conducta imputada es responsable por los actos proscritos.

Ciertamente, el caso de Rosario Toledo v. Distribuidora Kikuet, Inc., *supra*, se da en el contexto de una situación de discrimen por razón de sexo y hostigamiento sexual y no en el contexto de represalia, como en el presente caso. Sin embargo, en la controversia ante nos al igual que en el caso de Rosario Toledo v. Distribuidora Kikuet, Inc., *supra*, el autor directo de la conducta patronal que provocó el despido por represalias fue desplegada por la misma persona. Es decir, por el patrono real y también por el agente o supervisor directo del señor Santiago Nieves, ambos con el mismo poder y control de un patrono. Como mencioné, para llegar a esta conclusión, hicimos un análisis de la definición de patrono provista en cada uno de los mencionados estatutos y que a continuación reseño.

El Art. 2(2) de la Ley Núm. 17, 29 LPRA sec. 155a (hostigamiento sexual en el empleo), define patrono como:

> **[T]oda persona natural o jurídica** de cualquier índole, el Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo cada una de sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él, emplee personal mediante cualquier clase de compensación **y sus agentes y supervisores**. […] (Énfasis suplido).

De su parte, el Art. 2(2) de la Ley Núm. 69, 29 LPRA sec. 1322(2) (discrimen por razón de sexo), dispone que patrono:

Incluye a **toda persona natural o jurídica** que emplee obreros, trabajadores o empleados, **y al jefe, funcionario, agente, oficial, gestor, administrador, superintendente, capataz, mayordomo o representante de dicha persona natural o jurídica**. (Énfasis suplido).

Por último, el Art. 6(2) de la Ley Núm. 100, 29 LPRA sec. 151(2) (discrimen en el empleo), ofrece una definición muy similar de patrono, al disponer que:

Incluye **a toda persona natural o jurídica** que emplee obreros, trabajadores o empleados, **y al jefe, funcionario, agente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica**. […] (Énfasis suplido).

Partiendo de las definiciones transcritas, en Rosario Toledo v. Distribuidora Kikuet, *supra*, expresamos que las disposiciones de ley discutidas eran claras y estaban libres de ambigüedad, ya que incluían "a los supervisores, oficiales, administradores y agentes de [e]ste, e invoca[ba]n la intención inequívoca de la Asamblea Legislativa de responsabilizarlos por actos de hostigamiento sexual en el empleo cuando dichos actos [eran] cometidos por [e]stos".[48]

En ese contexto, es forzoso concluir que el lenguaje y la definición que la Ley 115-1991 da, al igual que las precitadas leyes laborales, al término "patrono" no se limita al patrono real o dueño de la empresa, sino que se extiende a sus agentes y toda persona responsable de la

---

[48] Rosario Toledo v. Distribuidora Kikuet, Inc., *supra*, pág. 643.

conducta en cuestión, sin distinción de clase alguna.[49] Como observamos previamente, la definición de patrono en la Ley Núm. 115-1991, según vigente al momento de los hechos, dirigía su prohibición a los patronos, pero más adelante aclaraba que este término "incluye a los agentes del patrono".[50]

## II

Sobre la reclamación del señor Santiago Nieves en cuanto a la responsabilidad de los recurridos al amparo del Artículo 1802 del Código Civil, *supra*, debo señalar que en múltiples instancias este Tribunal ha rechazado reconocer remedios compensatorios, más allá de los expresamente provistos en las leyes laborales.

A modo de ejemplo, en Rivera v. Security Nat. Life Ins. Co., 106 DPR 517 (1977), en el contexto de un empleado al que se le violentó su derecho a no ser penalizado en el empleo por organizarse para mejorar sus condiciones de trabajo, resolvimos que no se le podía exigir responsabilidad civil, a un patrono que infrinja las disposiciones de las Secs. 7 y 8 de la Ley Federal de Relaciones del Trabajo, *Labor-Management Relations Act of 1947*, sin que se probara que este incurrió en actuaciones torticeras más allá del acto del despido.[51]

Posteriormente, y partiendo de dicha determinación, en Porto y Siurano v. Bentley P.R., Inc., 132 DPR 331 (1986),

---

[49] Íd., pág. 645.
[50] 29 LPRA sec. 194.
[51] Íd., pág. 527.

reiteramos la citada norma y explicamos que un obrero o trabajador contratado por tiempo indeterminado que es despedido sin justa causa solamente tiene derecho al remedio exclusivo que provee la Ley Núm. 80. Ello, debido a que de la referida Ley no surge ningún otro remedio que el que ella misma dispone.

A base de los dos casos previamente reseñados, en la reciente opinión de SLG Pagán-Renta v. Walgreens, 190 DPR 251 (2014), insistimos en que la interpretación de los asuntos relativos a los remedios que se solicitan al amparo de una ley especial laboral u obrero-patronal debe ser restrictiva. Consecuentemente, mantuvimos la postura de este Tribunal de rechazar la propuesta de que el legislador dejó la puerta abierta a la utilización de algún otro remedio o causa de acción, provista por alguna ley general.[52]

## III

Cónsono con la normativa antes expuesta, la primera controversia requiere analizar y determinar si el término patrono, según definido en la Ley Núm. 115-1991, incluye a sus agentes, supervisores y representantes. Ello, cuando se alega y posteriormente se prueba que estos incurrieron en los actos de represalia delimitados en el citado estatuto.

Como ya mencioné, esta discusión ha sido objeto de la atención de varios paneles del Tribunal de Apelaciones. En algunas instancias dicho foro apelativo se ha negado a reconocer una acción personal en contra de los agentes de

---

[52] Íd., pág. 260.

los patronos. En estos casos, ha razonado que del texto de la Ley no surge una causa de acción personal en contra de los agentes de una empresa por actos propios de represalia tomados en contra de algún obrero.[53] Mientras que en otras instancias, diferentes paneles han utilizado como norte el caso de Rosario v. Distribuidora Kikuet, *supra*, y han resaltado que la definición de patrono de la Ley Núm. 115-1991, incluye a los agentes. Consecuentemente, han resuelto que la ley contra represalias sí permite una causa de acción contra un funcionario o agente del patrono en su carácter personal.[54] Como resultado, nos encontramos con una variedad de dictámenes carentes de uniformidad.

Esta misma suerte la han enfrentado las determinaciones del Tribunal Federal para el Distrito de Puerto Rico en torno a la controversia planteada. En algunas instancias ese Foro ha citado nuestras expresiones en distintas opiniones sobre derecho laboral[55] como ejemplo de la tendencia de este Tribunal a interpretar las leyes obrero-patronales de forma liberal a favor de los empleados. Conforme a ello, han concluido que la Ley Núm. 115-1991 provee una causa de acción personal en contra de un supervisor que ejerce actos de represalia en contra de un empleado de la compañía para

---

[53] A modo de ejemplo véase, Benavent Stoner v. Caribbean Harbor Pilots Trust Funds, KLAN201100798 (2011) y Sánchez Barreto v. Swiss Just De Puerto Rico, Inc., KLCE0300904 (2003).

[54] Véase, Rivera Velázquez v. Edwards Lifesciences Corp., KLAN200500285 (2006); Dones Batista v. Municipio de Canóvanas, KLCE0800520 (2008).

[55] Entre estas: Rosario v. Distribuidora Kikuet, *supra*; Irizarry v. Johnson & Johnson, 150 DPR 155 (2000); Ramírez de Ferrer v. Mari Bras, 142 DPR 941 (1997).

la que trabaja.[56] Mientras que otros dictámenes, haciendo un análisis más restrictivo, han concluido que la Ley Núm. 115-1991 no contempla una causa de acción personal en contra de los empleados del patrono.[57]

El señor Santiago Nieves solicita que para contestar a la interrogante que enfrentamos usemos como marco de referencia la determinación de este Tribunal en Rosario Toledo v. Distribuidora Kikuet, Inc., *supra*. Como reseñé previamente, en ese caso expresamos que las leyes que prohíben el hostigamiento sexual, el discrimen por razón de género y el discrimen en el empleo, especifican que los supervisores, oficiales, administradores y agentes de una compañía estaban comprendidos dentro de la definición de patrono que estas proveen.[58] Concluimos que este hecho representaba la intención inequívoca del legislador de imponer responsabilidad personal a los agentes de un patrono que incurre en actos de hostigamiento sexual. Nótese que la definición de la Ley Núm. 115-1991, según vigente al momento de los hechos que nos ocupa incluye a los agentes de este como parte de su definición.

Erróneamente la Opinión Mayoritaria señala que tal mención es un reflejo de la intención legislativa de imponer responsabilidad vicaria a los patronos por las actuaciones

---

[56] Véase, Hernández v. Raytheon Serv. Co. P.R., 2006 WL 1737167, (DPR 2006); Arroyo-Perez v. Demir Grp. Int'l, 733 F. Supp. 2d 322, 324 (DPR 2010).

[57] Véase, Torres v. House of Representatives of the Commonwealth of P.R., 858 F. Supp. 2d 172 (DPR 2012) y Rivera Maldonado v. Hosp. Alejandro Otero Lopez, 614 F. Supp. 2d 181 (DPR 2009).

[58] Véase, Parte II-B de esta Opinión Disidente y Concurrente.

de sus agentes. Entiendo que al igual que los preceptos analizados en Rosario Toledo v. Distribuidora Kikuet, Inc., *supra*, esta definición establece una causa de acción individual contra los oficiales de una compañía que hubieran incurrido en actos de represalia contra un empleado.

El historial legislativo de la Ley Núm. 115-1991, está huérfano de una discusión que atienda de forma directa la controversia que nos planteamos. No obstante, tras un análisis de este no encuentro ningún indicador de que el legislador hubiese pretendido excluir a los agentes del patrono de la responsabilidad civil legislada para los actos de represalia. Por el contrario, surge diáfanamente la intención de expandir al máximo el alcance de la protección a los empleados que sean víctimas de represalias. Así, la exposición de motivos del estatuto en discusión consagra la urgencia de conceder remedios adicionales, a los previamente disponibles, entre ellos compensación por daños reales y emocionales y honorarios de abogado. Además, como ya vimos, se tipificaron como delito los actos de represalia imponiendo responsabilidad criminal a los patronos que participaran en la decisión de despedir a un empleado que ejerciera alguna de las actividades protegidas.[59]

Asimismo, surge de los informes de las distintas Comisiones de lo Jurídico, del Trabajo, Asuntos del Veterano y Recursos Humanos de la Cámara y del Senado la intención de ampliar las definiciones de "empleado", "patrono" y

---

[59] Íd.

"persona", hasta ese momento contempladas en los estatutos laborales disponibles. A modo de ejemplo, véase el Informe del Senado, de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos del 22 de junio de 1991 sobre el P. del S. 987, págs. 2-3, donde las referidas comisiones establecieron que estas definiciones debían ampliarse de forma tal que se entendiera que la Ley sería "de aplicación a todo empleado, patrono o persona sin distinción de puesto, corporación o entidad". Es plausible concluir que el legislador, al realizar semejante salvedades, tuvo la intención de responsabilizar en su carácter personal al autor directo de los actos de represalias.

Recientemente la Asamblea Legislativa aprobó la Ley Núm. 169-2014, a los fines de enmendar la definición de patrono en la Ley Núm. 115-1991 "para establecer claramente su alcance".[60] Una vez más, la Asamblea Legislativa reafirmó la política pública de alta estima a la protección de los derechos de los trabajadores y extendió el alcance de la Ley de Represalias. La nueva definición del estatuto dispone que "Patrono":

Significa todos los patronos por igual, sean estos patronos públicos o privados, corporaciones públicas o cualquiera otra denominación de patronos que exista en el presente o se cree en el futuro, **toda persona natural o jurídica de cualquier índole**, incluyendo el Gobierno del Estado Libre Asociado de Puerto Rico, sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él,

---

[60] Véase, Exposición de Motivos de la Ley 169-2014.

emplee personas mediante cualquier clase de compensación **y sus agentes y supervisores**. […]

La citada enmienda, aunque aprobada con posterioridad a los hechos del caso de autos, nos arroja luz en cuanto a la intención legislativa de responsabilizar a los agentes del patrono en su carácter personal. Ante la oportunidad de enmendar la definición de patrono, el legislador aclaró que patrono, para efectos de la Ley Núm. 115-1991, incluye a "toda persona natural o jurídica de cualquier índole". Asimismo, en lugar de suprimir la inclusión de los agentes, añadió a los supervisores que le representan. Todo esto no es más que una expresión clara e inequívoca de la intención del legislador de imponer responsabilidad personal a los agentes de un patrono que incurre en actos de represalia.

Por otra parte, en <u>Rosario Toledo v. Distribuidora Kikuet, Inc.</u>, *supra*, destacamos que resultaría en un contrasentido otorgarles inmunidad a los supervisores, oficiales, administradores y agentes de un patrono, es decir a los autores directos de los daños resultantes de un acto de hostigamiento sexual, y hacer al patrono real o dueño de una empresa único responsable. Forzoso es llegar a la misma conclusión ante la controversia que hoy atiende este Tribunal.

La participación ciudadana en los procesos de investigación y adjudicación de los foros legislativos, administrativos y judiciales es de obvia vital importancia. Al crear una causa de acción que castiga los actos de represalias por ofrecer testimonio, expresión o información

ante alguno de estos foros, el legislador trató de fomentar dicha colaboración. Por ello, nuestra interpretación del estatuto debe tener el efecto de servir de aliciente para que los trabajadores, parte vulnerable dentro de una relación obrero-patronal, se sientan protegidos en caso de ser compelidos o que *motu proprio* participen de dichos procesos. Del mismo modo, resulta imperativo proteger a aquellos empleados que reclaman algún derecho o protección que nuestro ordenamiento les provee. Sin embargo, hoy lamentablemente es otro el proceder.

Resulta contradictorio que la Opinión Mayoritaria plantea que "la ley de represalia en sí no constituye un acto que pueda llevar a cabo un agente que no ostente poder sobre la situación laboral del empleado agraviado".[61] Sin embargo, precisamente en este caso quien comete los actos de represalias es el propio dueño de la empresa, persona con poder y control exclusivo de la situación laboral a la que se enfrentó el señor Santiago Nieves. Es decir, que quien participó **directamente** de los actos proscritos fue el "patrono", el "agente" y/o "supervisor", todos encarnados en la misma persona. Esto refuerza aún más el hecho de que el lenguaje utilizado en la ley de represalias es cónsono con la intención del legislador de crear una causa de acción contra "patrono" como persona jurídica y contra cualquier persona natural que incurra en la conducta proscrita.

---

[61] Opinión Mayoritaria, pág. 12.

No podemos soslayar el hecho de que **por lo general** los actos de represalia que la Ley Núm. 115-1991 pretende suprimir, en la mayoría de las ocasiones, son ejecutados por los supervisores, gerenciales o agentes de una empresa. Esto es así por el hecho de que son estas las personas que están en mayor contacto con los empleados de los patronos. Ahora bien, no es menos cierto que estos actos podrían, **como ocurrió en este caso**, darse en un escenario en el que "patrono" y "agente" sean la misma persona con capacidad de afectar los ámbitos cuyo poder, por lo general, lo ejerce el patrono como entidad con control pleno. Conforme a ello, una Mayoría de este Tribunal pretende otorgarle inmunidad a este por actos propios de represalia, disminuyendo así el efecto disuasivo que procuró el legislador para evitar las conductas proscritas.

Por otra parte, no podemos hacer abstracción de los remedios provistos por la Ley Núm. 115-1991. Una Mayoría entiende que estos pueden ser únicamente reclamados a la entidad o persona que se identifique como el patrono real y no a ningún sujeto que actúe como autor directo de los actos prohibidos, pudiendo ser este el propio patrono. Sin embargo, una lectura del estatuto en cuestión, nos lleva a distinta conclusión. No solo la Ley Núm. 115-1991, provee compensación por daños reales, angustias mentales y gastos de honorarios de abogado, los cuales son claramente oponibles ante un individuo en su carácter personal, sino

que como ya vimos el estatuto contempla una sanción criminal que implica una pena de reclusión.[62]

Resulta en un absurdo resolver que la pena de reclusión fue incluida para serle impuesta a los patronos como personalidad jurídica. Para justiciar a los patronos en dicha capacidad la Ley Núm. 115-1991 impuso la pena de multa. Ello, cónsono con lo establecido en el Código Penal de Puerto Rico en cuanto a las penas para personas naturales y las penas para personas jurídicas.[63] Es evidente que la intención del legislador al imponer una pena de reclusión oponible únicamente a una persona natural, fue responsabilizar en su carácter personal a los agentes del patrono, autor directo de los actos de represalia.

Reitero que en nuestra jurisdicción existe una preeminente política pública que persigue eliminar toda represalia contra un empleado que colabora con algún foro legislativo, administrativo o judicial así como los actos de represalia en contra del empleado que reclama algún derecho o protección que le provee el ordenamiento. Con ello en mente, entiendo que, contrario a lo que concluye una Mayoría de este Tribunal, a la luz del historial legislativo, de las normas de hermenéutica aplicables y de la más reciente expresión legislativa respecto el alcance de la Ley Núm. 115-1991, esta sí establece una causa de acción **individual** contra los oficiales de una compañía que

---

[62] Artículo 4 de la Ley (29 LPRA Sec. 194b).
[63] Véase, Artículos 48 y 75 del Código Penal (33 LPRA secs. 5081 y 5111).

hubieran incurrido en actos de represalia contra un empleado. Consecuentemente, los remedios provistos en la Ley son oponibles **a todo supervisor, oficial, administrador y agente de una empresa**, por aquellos actos que este haya ejecutado, así como al patrono real del empleado afectado.

Ciertamente la responsabilidad personal debe estar condicionada a que el acto de represalia sea cometido por el agente del patrono. La única persona con capacidad para contratar a un empleado y mantenerlo en nómina es el patrono real de una empresa. Por lo tanto, un despido representa un acto ejecutable solamente por el patrono que contrató. No cualquier agente puede ser responsabilizado en su carácter personal por el despido de un empleado. Es decir, un supervisor que se limita a informar la determinación del patrono de despedir a un empleado en represalias por alguna actividad protegida, no debe ser responsabilizado por tal decisión. Será responsable en su carácter personal aquel agente que participe en la decisión de despedir a un empleado por este haber ofrecido testimonio ante alguno de los foros investigativos proscritos.

Hago notar que el caso que hoy nos ocupa no ha llegado a la etapa del juicio. No obstante, si en su día se demostrara que el despido del señor Santiago Nieves fue el resultado de represalias por su colaboración con el Departamento de Hacienda y que los recurridos fueron las personas que participaron y tomaron tal decisión, estos

últimos deberían responder en su carácter personal, en conformidad con lo dispuesto en la Ley Núm. 115-1991.

Por último, en cuanto a la causa de acción al palio del Artículo 1802 del Código Civil, *supra*, por las alegadas actuaciones torticeras de los recurridos nuestro ordenamiento jurídico dispone que, en aquellos casos de índole obrero-patronal, un empleado al que se le violentan sus derechos laborales no tiene a su disposición remedios adicionales, ni el patrono se expone a sanciones penales, más allá que las sanciones y compensaciones contenidas en las leyes laborales especiales. Ello, siempre y cuando el empleado no logre demostrar un acto torticero, o se le impute al patrono alguna actuación tipificada como delito, independiente al acto de despido o discrimen regulado en el estatuto laboral pertinente.

En vista de lo anterior, el reclamo del señor Santiago Nieves, tanto en su querella como en sus distintas comparecencias ante los foros judiciales que han intervenido en la presente controversia, se limita a alegar que fue despedido en represalia por su colaboración con el Departamento de Hacienda. Por lo tanto, es mi criterio que ante la ausencia de un reclamo de algún acto torticero independiente al despido, los recurridos no son responsables bajo el Artículo 1802 del Código Civil, *supra*.

## IV

Por todos los fundamentos antes esbozados disiento del dictamen de la Mayoría del Tribunal en cuanto a no imponer responsabilidad personal sobre los agentes de un patrono.

Por otro lado, en referencia al reclamo del peticionario bajo el Art. 1802 del Código Civil coincido con el criterio mayoritario. Por lo tanto, devolvería el caso al Tribunal de Primera Instancia para que continúe con los procedimientos y resuelva en conformidad con lo expuesto.

Edgardo Rivera García
Juez Asociado