ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| OSVALDO MUÑIZ RUIZ<br><br>Apelante<br><br>v.<br><br>AMSPEC PUERTO RICO LLC<br><br>Apelada | **KLAN202400414** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Guayama<br><br>Civil Núm. PO2022CV00273<br><br>Sobre: Procedimiento Sumario Instado al Amparo de la Ley 2 de 17 de octubre de 1967; Acoso u Hostigamiento Laboral; Daños y Perjuicios; Represalias; Despido Injustificado |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de julio de 2024.

Comparece ante este foro el Sr. Osvaldo Muñiz Ruiz (señor Muñiz o "el apelante") y nos solicita que revisemos una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, notificada el 16 de abril de 2024. Mediante el referido dictamen, el foro primario denegó acoger la *Moción de Sentencia Sumaria* en su totalidad que presentó AmSpec Puerto Rico, LLC (AmSpec o "parte apelada"). Por ello, desestimó la *Querella* instada por el apelante, en cuanto a los reclamos realizados al amparo de la Ley Núm. 90 y de la Ley Núm. 115.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia Parcial* apelada.

**I.**

El 9 de febrero de 2022, el señor Muñiz presentó una *Querella* en contra de AmSpec por alegado acoso u hostigamiento laboral al amparo de la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico,* Ley Núm. 90 de 7 de agosto de 2020; además de represalias al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194 *et seq*; despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976; y daños y perjuicios, mediante la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 octubre de 1964, 32 LPRA sec. 3118, según enmendada.[1] Esbozó que, desde octubre de 2017 comenzó a trabajar para la parte apelada como Inspector. Sin embargo, añadió que llegó a realizar labores administrativas y operacionales de la empresa que no estaban relacionadas a su clasificación de empleo. El apelante sostuvo que era amenazado constantemente con acciones disciplinarias si no acataba las órdenes y exigencias que le imponía AmSpec, por lo que, se llegó a sentir intimidado con que podía ser despedido. En particular, alegó que, para junio de 2021, le informó al Sr. José Rodríguez, su supervisor directo, que se excusaba de ir a trabajar por problemas estomacales, y presentó un certificado médico. No obstante, arguyó que su supervisor le insistió que debía presentarse a trabajar, y al no hacerlo, en represalias divulgó la razón por la que el apelante no se reportó a laboral, siendo objeto de burla entre sus compañeros. Posteriormente, puntualizó que, debido a situaciones de salud, solicitó a la parte apelada que el trabajo

---

[1] *Querella*, anejo I, págs. 1-7 del apéndice digital del recurso.

asignado solo estuviera relacionado a la descripción de su puesto, debido a que la carga era excesiva. Sin embargo, reiteró que, debido a su queja interna, el señor Rodríguez, en represalias comenzó a asignarle tareas para las cuales el apelante no tenía el entrenamiento requerido. Finalmente, indicó que el 18 de noviembre de 2021, al terminar su jornada laboral a las 12:30am, se reportó a la oficina del señor Rodríguez, quien le informó estaba siendo despedido por una alegada insubordinación.

Por todo lo anterior, alegó que fue objeto de acoso laboral u hostigamiento por lo que solicitó una suma no menor de $500,000.00; por las acciones en represalias en violación a la Ley Núm. 115 solicitó una suma no menor de $250,000.00, más una suma no menor de $4,000.00 mensuales por los salarios dejados de devengar desde que fue despedido. Añadió que, en la alternativa de que el foro primario no concediera el despido discriminatorio y/o represalias, planteó que la querella procedería bajo la Ley Núm. 80, solicitando una suma de $29,547.70.

El 4 de marzo de 2022, AmSpec presentó su *Contestación a la Querella*.[2] En ésta, puntualizó que el apelante fue despedido por conducta insubordinada. Indicaron que, al señor Muñiz nunca lo hostigaron, ni intimidaron, amenazaron o cometieron represalias en su contra. Al contrario, reconocieron que las horas extras trabajadas le fueron pagadas, así como fue compensado al ejercer funciones de Coordinador. Añadieron que, el apelante fue amonestado por insubordinación y mal manejo del equipo de la empresa. Asimismo, arguyeron que tienen

---

[2] *Contestación a la Querella*, anejo II, págs. 8-17 del apéndice digital del recurso.

políticas que prohíben el discrimen en todas sus modalidades, hostigamiento y represalias en el empleo, y que el señor Muñiz nunca presentó una querella interna. Al contrario, expresaron que al apelante le tuvieron que llamar la atención, cometía faltas de respeto, había pobre comunicación, y tenía problemas disciplinarios. Así las cosas, señalaron que la decisión del despido fue con justa causa.

Luego de varias incidencias procesales, el 24 de enero de 2023, AmSpec presentó una *Moción de Sentencia Sumaria*, la cual acompañó de una declaración jurada y una serie de documentos evidenciarios.[3] En dicha moción, la empresa apelada alegó que el despido del apelante estuvo justificado. Además, sostuvieron que la causa de acción bajo la Ley Núm. 90, por alegado hostigamiento laboral, no procede puesto que el apelante no cumplió con los requisitos procesales de ley, al no presentar una querella interna y poder llevar a cabo una mediación, antes de una reclamación judicial. En cuanto a la reclamación por represalias, sostuvieron que el señor Muñiz no presentó evidencia que apoyara sus alegaciones. Alegaron que, no había un nexo causal entre la alegada queja presentada y la acción adversa de empleo. Por tanto, esbozaron que el apelante no logró establecer un caso *prima facie* de discrimen por razón de represalias. En vista de lo anterior, solicitaron la desestimación de las reclamaciones hechas en su contra, toda vez que no existe controversia real sobre los hechos materiales y pertinentes del caso.

---

[3] *Moción de Sentencia Sumaria*, anejo III, págs. 18-45 del apéndice digital del recurso.

Por su parte, el 26 de enero de 2023 el señor Muñiz presentó una *Moción en Solicitud de Sentencia Sumaria Parcial*.[4]   Mediante esta, esbozó que no había controversia que el despido fue injustificado, puesto que, para que un despido como primera sanción esté justificado debe constituir un riesgo a la paz laboral o normal funcionamiento del negocio.  Por ello, sostuvo que, si la alegada causa del despido fue la insubordinación por su parte en contra de su supervisor, no es justa causa como primera sanción para el despido. Añadió que, en el *Manual de Empleados de AmSpec,* la falta u ofensa por la cual fue despedido no está expresamente catalogada como una situación seria que conlleve el despido.  A su vez, dispuso que nunca había sido amonestado por una falta de dicha índole.  Por lo tanto, reiteró que la parte apelada no podía alegar que había un patrón de conducta o que había violado las políticas de la empresa en más de una ocasión, y más cuando la empresa nunca realizó alguna investigación del alegado suceso.

El 15 de febrero de 2023, AmSpec presentó su *Oposición a Moción de Sentencia Sumaria Parcial*.[5]   En esencia, sostuvo lo siguiente: "Muñiz fue un empleado de AmSpec con un historial de insubordinación que además tenía amonestaciones previas en su expediente de personal y, por sí mismo y sin autorización previa, abandonó parte de las funciones que le fueron asignadas como empleado de AmSpec, razones por las cuales su despido fue justificado."  Por lo anterior, planteo que

---

[4] *Moción en Solicitud de Sentencia Sumaria Parcial*, anejo IV, págs. 621-636 del apéndice digital del recurso.
[5] *Oposición a Moción de Sentencia Sumaria Parcial*, anejo V, págs. 1099-1125 del apéndice del recurso.

la decisión de despedir al señor Muñiz se debió por violar las normas de conducta de la empresa, al no demostrar una conducta satisfactoria, y esta ser impropia e insubordinada. Añadieron que, las políticas de la AmSpec incluyen el despido, aun como primera ofensa.

El 28 de febrero de 2023, el señor Muñiz presentó su *Oposición a Moción en Solicitud de Sentencia Sumaria*.[6] En cuanto al reclamo bajo la Ley Núm. 90, arguyó que al momento de los hechos AmSpec no había establecido un proceso interno para manejar querellas sobre acoso laboral, así como tampoco le informó sobre el requisito de agotar remedios, por lo que, la parte apelada incumplió con la Ley. En cuanto a la causa de acción por represalias, bajo la Ley Núm. 115, manifestó que logró establecer a *prima facie* que la "queja" o actividad protegida se produjo cuando decidió no continuar ejerciendo las funciones de coordinador, por la sobre carga laboral. Por lo tanto, reiteró que no existían controversias sobre que su despido fue sin justa causa.

En la misma fecha, el apelante presentó su *Réplica a Oposición a Moción de Sentencia Sumaria Parcial*.[7] En síntesis, planteó que AmSpec incluyó por primera vez en su oposición a la sentencia sumaria parcial, que la razón o justificación para el despido del apelante fue una alegada conducta negligente o no satisfactoria. Sostuvo que, la parte apelada pretendió enmendar sus alegaciones para incluir la causal o justificación del despido, la cual no incluyeron en su *Contestación a la Querella*, por

---

[6] *Oposición a Moción en Solicitud de Sentencia Sumaria*, anejo VI, págs. 1212-1244 del apéndice digital del recurso.
[7] *Réplica a Oposición a Moción de Sentencia Sumaria Parcial*, anejo VII, págs. 1748-1762 del apéndice digital del recurso.

lo que, dicha acción está vedada por el Tribunal Supremo. Por lo tanto, solicitó que el foro primario declarara con lugar la moción de sentencia sumaria parcial que presentó.

El 22 de marzo de 2023, AmSpec presentó una *Réplica a Oposición a Moción de Sentencia Sumaria*.[8] Mediante esta, alegó que el apelante estaba induciendo a error al foro apelado, sobre el intento de la empresa para enmendar la razón del despido en su *Moción de Sentencia Sumaria*. Señaló que, en la Contestación a la Querella, se desprendía en múltiples párrafos los motivos por los cuales el señor Muñiz fue despedido. Además, de que surgía de la hoja de acción disciplinaria documentando su despido. Finalmente, reiteraron que no hay hechos esenciales en controversia en torno a las reclamaciones hechas por el apelante, por lo que, procedía desestimar las reclamaciones en su contra.

Posteriormente, ambas partes presentaron sus respectivas dúplicas a las mociones anteriormente presentadas.[9]

Luego de varias incidencias procesales, el 21 de marzo de 2024, el foro primario notificó una *Resolución,* mediante la cual declaró *No Ha Lugar* a la *Moción en Solicitud de Sentencia Sumaria Parcial*, presentada por el señor Muñiz.[10] Concluyó que, existen controversias en los planteamientos expuestos por las partes, por lo que, impedía se dictara sentencia sumariamente. En

---

[8] *Réplica a Oposición a Moción de Sentencia Sumaria*, anejo IX, págs. 1763-1793 del apéndice digital del recurso.
[9] *Dúplica A Réplica A Moción de Sentencia Sumaria*, anejo XI, págs. 1794-1809 del apéndice digital del recurso. *Dúplica en Relación a Solicitud de Sentencia Sumaria*, anejo XI, págs. 1811-1823. *Íd.*
[10] *Resolución*, anejo XIV, págs. 1828-1837 del apéndice digital del recurso.

consecuencia, mantuvo la *Conferencia con Antelación al Juicio*.

Asimismo, luego de evaluar las mociones presentadas por las partes, respecto a la *Moción de Sentencia Sumaria* presentada por AmSpec, el foro primario notificó el 16 de abril de 2024 la *Sentencia Parcial* apelada.[11] Mediante el referido dictamen, el foro *a quo* determinó que el apelante no agotó los remedios internos y de mediación que exige la Ley Núm. 90, por lo que, desestimó dicho reclamo. Señaló que, AmSpec logró demostrar que contaba con un procedimiento para el manejo de las querellas, mientras que el señor Muñiz, no evidenció que le hubiera notificado a la empresa o habría acudido al negociado de Métodos Alternos.

En cuanto al reclamo bajo la Ley Núm. 115, el foro primario concluyó que la queja que realizó el apelante, no constituía una conducta protegida por ley, "sino más bien una comunicación relacionada a la tarea que le ordenaron realizar." En síntesis, el foro apelado dispuso lo siguiente:

> El Tribunal dicta la siguiente Sentencia Parcial:
>
> • En cuanto a desestimar el recurso por no prevalecer el reclamo al amparo de la Ley 90, el Tribunal declara **HA LUGAR** lo solicitado por AmSpec Puerto Rico LLC.
>
> • En cuanto a desestimar el recurso por no prevalecer el reclamo al amparo de la Ley 115, el Tribunal declara **HA LUGAR** lo solicitado por AmSpec Puerto Rico LLC.
>
> […]
>
> Quedando pendiente de atender el reclamo al amparo de la Ley 80, el Tribunal entiende que lo que procede es la celebración de un Juicio donde se puedan dilucidar todas

---

[11] *Sentencia Parcial*, anejo __, págs. 1838-1850 del apéndice digital del recurso.

controversias que puedan existir entre las partes. Se mantiene la Conferencia con Antelación al Juicio señalada para el 16 de julio de 2024 a las 9:30 am, mediante videoconferencia.

Inconforme, el 26 de abril de 2024, el señor Muñiz acudió ante nos y mediante el recurso de *Apelación* formuló los siguientes señalamientos de error:

> ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN SOBRE ACOSO U HOSTIGAMIENTO LABORAL DEBIDO A QUE DE LAS ALEGACIONES Y DE LOS HECHOS INCONTROVERTIDOS NO PUEDE CONCLUIRSE CERTERAMENTE QUE EL APELANTE NO TENÍA DERECHO A NINGÚN REMEDIO EN LEY.

> ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN POR REPRESALIAS AL RESOLVER QUE EL APELANTE NO PARTICIPÓ DE UNA ACTIVIDAD PROTEGIDA, YA QUE TOMÓ COMO BASE UN HECHO ERRÓNEO PARA REALIZAR SU DETERMINACIÓN.

El 10 de mayo de 2024, AmSpec presentó su *Alegato en Oposición a Apelación*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

**-A-**

Como es sabido, la moción de sentencia sumaria es un mecanismo procesal que permite la ágil disposición de casos sin la celebración de un juicio, siempre que no existan controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120; *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). El propósito de esta moción es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 2023 TSPR 80; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el

promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia". *Oriental Bank v. Caballero García*, 2023 TSPR 103; *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En ese sentido, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.*, pág. 213; citando a Cuevas Segarra*, Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2000, T.I, pág. 609.

A esos fines, la Regla 36.3 de Procedimiento Civil, *supra*, establece los requisitos de forma para la moción que se inste y su respectiva oposición. *Universal Insurance Company v. ELA de Puerto Rico*, 211 DPR 455, 472 (2023). El precitado cuerpo reglamentario preceptúa las formalidades que debe exhibir una moción de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas

de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3(a).

En tales escenarios, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil". *Oriental Bank v. Caballero García*, supra. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación." *Íd*. Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Íd*. También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. *Íd*. Además, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia." *Fernández Martínez v. RAD-MAN San Juan*, supra, pág. 336. Ahora bien, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. *Oriental Bank v. Caballero García*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd*., pág. 214.

Para determinar si existen controversias de hechos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal." *Ramos Pérez v.*

*Univisión*, supra, pág. 210. *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, éstos deben analizarse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 734 (1994*); Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

En el proceso de disponer de una solicitud de sentencia sumaria, el juzgador no podrá tomar en consideración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos brindada anteriormente y el exponente no clarifica, a satisfacción del tribunal, la discrepancia entre las dos posiciones. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 440 (2013). En estas instancias opera un análisis bajo la doctrina de *sham affidavit*. Según el Tribunal Supremo de Puerto Rico, esta normativa aplica cuando:

> (1) [U]na parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. *Lugo Montalvo v. Sol Meliá Vacation Club*, 194 DPR 209, 221-222 (2015); *SLG Zapata*

*Rivera v. J.F. Montalvo*, supra, págs. 440-442.

En ese sentido, el tribunal rechazará una declaración subsiguiente si la inconsistencia entre las dos declaraciones resulta evidente y no se ofrece una explicación adecuada para la nueva versión. *SLG Zapata Rivera v. J.F. Montalvo*, supra, págs. 440-441. De igual modo, no es permisible la utilización de este subterfugio para que una parte se retracte de su testimonio bajo juramento con el fin de evitar dictar sentencia sumaria contrario al objetivo de la Regla 36 de Procedimiento Civil. *Íd*. pág. 441. No obstante, esta doctrina no se existe a aquellas "inconsistencias de poca trascendencia que resultan de discrepancias o errores de buena fe o de evidencia descubierta posteriormente." *Íd*.

Por otro lado, no es recomendable emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. International Shipping Agency, Inc*., supra, pág. 980; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). No obstante, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria." *Birriel Colón v. Supermercado Los Colobos*, supra; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 337.

De otra parte, nuestro esquema procesal permite solicitar una sentencia sumaria por insuficiencia de la prueba. *Ramos Pérez v. Univisión,* supra, pág. 218*; Pérez*

*v. El Vocero de PR,* 149 DPR 427, 447 (1999). Cuando el reclamante "no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda." *Medina v. M.S. & D. Química P.R., Inc.*, pág. 728. En tal escenario, el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho, procede la desestimación de la reclamación. *Ramos Pérez v. Univisión*, supra, pág. 218

En resumen, el tribunal debe abstenerse a otorgar este remedio cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* supra; *Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 335-336.

-B-

Los tribunales revisores se encuentran en la misma posición que el foro primario para determinar si procede una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos*, supra. En estas instancias, ostentamos el deber de "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3." *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra, pág. 338; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020). De resolver que los

hechos materiales realmente están incontrovertidos, entonces procede "revisar si el foro primario aplicó correctamente el derecho." *Oriental Bank v. Caballero García,* supra. Véase, además: *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, supra. Cabe destacar que, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas*, supra, pág. 114. No tenemos facultad para adjudicar hechos materiales y esenciales en disputa, pues esa tarea corresponde al foro primario. *Íd.*, pág. 115.

-C-

La *Ley Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, según enmendada, establece un mecanismo especial para la rápida consideración y adjudicación de las querellas presentadas empleados, principalmente, en las reclamaciones en torno a salarios, beneficios o derechos. *Peña Lacern v. Martínez Hernández*, 210 DPR 425, 434 (2022). La naturaleza sumaria de este procedimiento procura desalentar los despidos injustificados y provee al obrero despidos medios económicos para su subsistencia mientras consigue un empleo. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018); *Aguayo Pomales v. R & G Mortg.,* 169 DPR 36, 43 (2006).

En aras de asegurar el trámite expedito, la precitada ley dispone que "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento

establecido en esta ley." 32 LPRA sec. 3120. Esta limitación facilita "la rapidez y la celeridad de la resolución de las reclamaciones, propósito al que los tribunales deben dar estricto cumplimiento." *Dávila Rivera v. Antilles Shipping, Inc.,* 147 DPR 483, 492 (1999).

**-D-**

La Ley Núm. 90 de 7 de agosto de 2020, mejor conocida como *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, 29 LPRA sec. 3111, *et seq.*, se promulgó con el fin de atender de manera expresa "una de las peores situaciones que un empleado puede enfrentar en el ámbito profesional; el acoso laboral."[12] En particular, con el referido estatuto la Asamblea Legislativa quiso atender aquellas instancias en que el acoso no estaba vinculado a actos discriminatorios o de represalias contemplados en otras leyes especiales. En lo pertinente, definió acoso laboral de la siguiente manera:

> […] aquella conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos, tales como: la inviolabilidad de la dignidad de la persona, la protección contra ataques abusivos a su honra, su reputación y su vida privada o familiar, y la protección del trabajador contra riesgos para su salud o integridad personal en su trabajo o empleo. Esta conducta de acoso laboral crea un entorno de trabajo intimidante, humillante, hostil u ofensivo, no apto para que la persona razonable pueda ejecutar sus funciones o tareas de forma normal. Art.

---

[12] Véase, Exposición de Motivos de la Ley Núm. 90. Apuntamos, además, que, conforme a su Artículo 16, la Ley Núm. 90 entró en vigor inmediatamente después de su aprobación el 7 de agosto de 2020.

4(3) de la Ley Núm. 90, 29 LPRA sec. 3114(3).

En cuanto al ámbito de su aplicación, el Artículo 3 del estatuto dispone que este aplicará a personas empleadas, sin importar la naturaleza del empleo, su categoría, jerarquía o clasificación, ni la duración del contrato de empleo, que sean objeto de la conducta denominada como acoso laboral. 29 LPRA sec. 3113.

Por otro lado, el Artículo 5 dispone que todo patrono que incurra, fomente o permita el acoso laboral, será civilmente responsable frente a las personas afectadas. 29 LPRA sec. 3115. Igualmente, establece que será responsabilidad de todo patrono tomar las medidas necesarias para eliminar o reducir al mínimo la ocurrencia de acoso laboral en el lugar de trabajo. Por ello, el referido artículo dispone que todo patrono adoptará e implementará las políticas internas necesarias a los fines de prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo, así como también deberá investigar todas las alegaciones sobre el particular e impondrá las sanciones que correspondan. Será responsable, además, por el acoso laboral incurrido por el personal de supervisión a su cargo u otros empleados, si el patrono, sus agentes o supervisores sabían o debían estar enterados de dicha conducta. El lenguaje del estatuto es mandatorio, no optativo, por lo que la responsabilidad del patrono de adoptar todas las medidas necesarias para evitar tal conducta es obligatoria.

Adicionalmente, en cuanto al deber de difusión y asesoramiento que establece el Artículo 9, los patronos tienen la obligación de exponer el contenido del

estatuto en un lugar visible para todos sus empleados, y orientarlos sobre las medidas, políticas y procesos adoptados en el lugar de trabajo. 29 LPRA sec. 3119.

Subrayamos que el lenguaje del estatuto es claro y libre de ambigüedad. El patrono está obligado a adoptar e implantar las políticas internas para canalizar las quejas de sus empleados; tiene que difundir los mecanismos adoptados para poner en vigor la Ley Núm. 90, y asesorar a sus empleados y supervisores sobre sus derechos y obligaciones al amparo de la ley. Además, los empleados tienen que ser debidamente informados y orientados sobre cuáles son las medidas, políticas y procesos que se han adoptado por el patrono para prevenir el acoso laboral.

Consignado esto, la Ley Núm. 90 también le impone al empleado que reclame ser víctima de acoso laboral el **deber de recurrir, en primera instancia, al procedimiento establecido por el patrono y, si este no rinde frutos, deberá acudir a un proceso de mediación de conflictos**. A esos efectos, el estatuto dispone, en lo pertinente, los siguiente:

> **Toda persona que reclame ser víctima de acoso laboral deberá comunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono,** el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos, la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico, la Rama Legislativa y la Rama Judicial, según aplique.
>
> **Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial.** Si habiéndose orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal

competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley. Art. 10 de la Ley Núm. 90, 29 LPRA sec. 3120. (Énfasis nuestro).

**-E-**

El Artículo 2 de la Ley Núm. 115-1991, según enmendada, conocida como la *Ley de Represalias contra el Empleado por Ofrecer Testimonio*, establece que:

(a) Ningún patrono podrá despedir, amenazar o discriminar contra un "empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

(b) Cualquier persona que alegue una violación a esta Ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.

(c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso *prima facie* de violación a la ley probando que participó en una actividad protegida por esta Ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un

mero pretexto para el despido.    29 LPRA sec.194(a).

A través de esta legislación se le brinda protección a empleados frente a represalias que pueda tomar un patrono contra éstos por proveer testimonio, expresión o información, ya sea verbal o escrita, ante un foro judicial, legislativo o administrativo. *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 361 (2009); *Ocasio v. Kelly Servs*. 163 DPR 653, 684 (2005).  Sabido es que la Ley Núm. 115 confiere un término prescriptivo de tres (3) años, contados a partir de la ocurrencia de la alegada violación, para instar una reclamación civil en contra del patrono.  Se podrán otorgar los siguientes remedios al demandante: (1) daños reales sufridos; (2) angustias mentales; (3) restitución en el empleo; (4) salarios y beneficios dejados de percibir; y (5) honorarios de abogado.  Artículo 2 (b) de la Ley Núm. 115, 29 LPRA sec. 194(b).  Así, el propósito del estatuto es proteger a los empleados de cualquier discrimen por medio de represalias por participar en una actividad protegida. *Íd.*, pág. 684.

Nuestro más Alto Foro ha resuelto que "las prohibiciones contra las represalias sirven para imprimirle efectividad a los estatutos y asegurarse de que el patrono no pueda utilizar la coacción, intimidación o la necesidad económica de la víctima de discrimen u hostigamiento sexual para impedir la acción en su contra." *Santiago Nieves v. Braulio Agosto Motors*, 197 DPR 369, 380 (2017).  Además, una persona puede ser responsable civilmente en su carácter personal por actos que dieron base a una reclamación por represalia, aunque no sea responsable por la represalia en sí misma. *Íd.* Por otro lado, ordinariamente una persona, puede

reclamar daños por conducta torticera en su contra, utilizando otra fuente independiente para el reclamo, como lo sería el Artículo 1802 del Código Civil. *SLG Pagán- Renta v. Walgreens*, 190 DPR 251 (2014).

Un empleado tiene dos (2) maneras de establecer un caso de represalias, esto es: (1) probar la violación mediante evidencia directa o circunstancial que demuestre un nexo causal entre la conducta del patrono demandado y el daño sufrido; o (2) establecer la presunción *juris tantum* de la Ley Núm. 115-1991. Es decir, estableciendo un caso *prima facie*. *SLG Rivera Carrasquillo v. AAA*, supra, pág. 362. Véase inciso (c) del Artículo de la Ley 115-1991, 29 LPRA sec. 194b(c). Véase, además: *Rivera v. Action Service Corp.*, 185 DPR 431, 445 (2012). Así, una vez el obrero presenta un caso *prima facie*, se crea una presunción de que el despido fue en represalias. *SLG Rivera Carrasquillo v. AAA*, supra., pág. 361.

Un empleado establece un caso *prima facie* por preponderancia de la prueba estableciendo que: (1) participó en una actividad o conducta protegida por ley; (2) sufrió una acción adversa por parte del patrono; y, que (3) existe un nexo causal entre la conducta protegida y la referida acción adversa. *SLG Rivera Carrasquillo v. AAA*, supra., pág. 365. Establecido lo anterior, le corresponde al patrono rebatir la presunción fundamentando el despido legítimamente. *Íd*. En caso de que el patrono cumpla con el segundo paso, el empleado debe demostrar que la razón alegada por el patrono es un mero pretexto para la acción adversa. *Íd*.

Con relación al primer requisito que todo empleado debe establecer para probar un caso *prima facie* por

represalias el Tribunal Supremo de Puerto Rico ha establecido que el legislador no tuvo la intención de limitar el alcance de las protecciones ofrecidas por el estatuto únicamente a expresiones realizadas en procesos investigativos. *Feliciano Martes v. Sheraton*, 182 DPR 368, 394 (2011); *Irizarry v. J & J Cons. Prods. Co. Inc.*, 150 DPR 155, 164 (2000). Por ello, resolvió que la Ley Núm. 115 protege al empleado contra represalias de su patrono por ofrecer cualquier testimonio o información en cualquier foro bajo cualquier procedimiento.

En cuanto al segundo requisito, que exige que el empleado haya sido despedido, amenazado o discriminado en el empleo subsiguiente a su incursión en la actividad protegida, nuestro Tribunal Supremo explicó que la proximidad temporal es suficiente al momento de establecer un caso *prima facie*. *Feliciano Martes v. Sheraton,* supra, pág. 399. Es decir, que el empleado demuestre "que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida." *Íd.*, pág. 397. "[E]l legislador pretendió que, al establecer su caso *prima facie*, el empleado no se enfrentará a un proceso probatorio oneroso, sino que bastará su comprobación de que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida. Íd., pág. 399-400.

### III.

En el caso de autos, el señor Martínez presentó dos (2) señalamientos de error. En el primero, alega que erró el foro primario al desestimar la causa de acción sobre acoso u hostigamiento laboral, puesto que, el apelante no tenía derecho a ningún remedio en ley.

El señor Muñiz sostiene que la parte apelada no publicó ni estableció un protocolo informando la implementación de la Ley Núm. 90 a sus empleados, incluso señala que el *Manual de Empleados* que recibió, su última revisión fue diciembre de 2015. Por ello, arguye que cuando informó el patrón de acoso u hostigamiento laboral, no fue instruido sobre el proceso a seguir.

De igual forma, sostiene que, de no proceder el reclamo bajo la Ley Núm. 90, en su querella incluyó alegaciones que son suficientes para establecer una causa de acción por daños y perjuicios bajo el Código Civil, los cuales ha sufrido como consecuencia del acoso u hostigamiento laboral, por lo que, no procedía la desestimación de la reclamación.

Por su parte, AmSpec alega que el señor Muñiz tenía conocimiento del *Manual de Empleados*, el cual establece las prohibiciones de cualquier tipo de hostigamiento, además del mecanismo o proceso para reportar conductas constitutivas de hostigamiento, en cualquiera de sus modalidades. Sin embargo, reiteran que el apelante aun conociendo las normas, no presentó una queja interna, por lo que, no cumplió con el mecanismo que dispone el Manual.

Asimismo, plantearon que la alegada causa de acción por daños al amparo del Artículo 1536 del Código Civil de 2020 que el apelante manifestó, aducen que la querella fue radicada bajo la Ley Núm. 2 y nunca mencionó que presentaba un reclamo por daños, por lo que, dicha enmienda es impermisible a las alegaciones.

Conforme al derecho antes expuesto, el empleado que reclame ser víctima de acoso laboral tiene el deber de recurrir, en primera instancia, al procedimiento

establecido por el patrono y, si este no rinde frutos, deberá acudir a un proceso de mediación de conflictos.

En el caso de autos, no surge del expediente que el señor Muñiz haya presentado evidencia acreditativa de que haya cumplido con dicho trámite, previo a radicar la querella ante el foro de instancia. A pesar, de que el apelante expresa que AmSpec no tenía el *Manual de Empleados* actualizado con la Ley Núm. 90, su Manual sí disponía el mecanismo para reportar incidentes de hostigamiento. Por lo tanto, al no agotar el trámite administrativo procedía que el foro *a quo* desestimara la causa de acción, sin perjuicio, por falta de jurisdicción sobre la materia.

En cuanto al reclamo bajo el Artículo 1536 del Código Civil, al haber una reclamación pendiente en el foro primario bajo la Ley Núm. 80, y la cual contempla el resarcimiento de daños, nuestro Tribunal Supremo ha resuelto que "como regla general, ante una conducta de un patrono prevista y sancionada por una legislación especial de índole laboral, el empleado solo tendrá derecho al remedio que dicha ley disponga sin poder acudir al Art. 1802 de Código Civil." *Santiago Nieves v Braulio Agosto Motors*, supra. Adviértase que el actual Artículo 1536 del Código Civil, *supra*, sustituyó el Artículo 1802 del Código Civil de 1930.

Asimismo, nuestro más Alto Foro estableció que al interpretar una ley especial de tipo laboral en el contexto del remedio solicitado han sido consistentes en interpretar de manera restrictiva el estatuto y negándose a aceptar que el legislador dejó la puerta abierta a otros remedios o causas de acción, provista por alguna ley general. *SLG Pagan-Renta v Walgreens*,

*supra*. Por lo tanto, ante la existencia de legislación especial laboral que atiende los hechos que se alegan en la *Querella* y que de las alegaciones no surge hecho alguno que pudiera crear una causa de acción individual bajo estos artículos, prevalecerá el principio de especialidad de las leyes.

En cuanto al segundo señalamiento de error, el señor Muñiz alega que incidió el foro de instancia al desestimar la causa de acción por represalias al no participar de una actividad protegida.

Manifiesta que, la queja o "actividad protegida" no fue la que presentó AmSpec, sino, que ésta se produjo cuando decidió no continuar realizando las funciones de Coordinador, al informarle a su supervisor sobre el exceso de carga laboral. Por lo que, sostiene que luego de ese momento, su supervisor comenzó a asignarle tareas para las cuales no tenía preparación o el conocimiento necesario. Así pues, alega que ante la ausencia de prueba por parte de AmSpec, procedía la continuación del pleito.

La parte apelada, plantea que la alegada queja no es una actividad protegida bajo la Ley Núm. 115. Sostienen que el señor Muñiz de lo que alegadamente se quejó, fue "de un alegado trato injusto, debido a una supuesta carga irrazonable de trabajo." Añadieron que, de todas formas, la supuesta queja no jugó ningún rol en las acciones disciplinarias y su eventual despido.

En relación a la causa de acción sobre represalias al amparo de la Ley Núm. 115, *supra*, esta fue aprobada para proteger a los empleados de las represalias que sus patronos pudiesen tomar en su contra por ofrecer algún tipo de testimonio, expresión o información, verbal o

escrita, en los foros legislativos, administrativos o judiciales, siempre que la información provista no sea difamatoria, ni privilegiada de acuerdo con la ley. A su vez, crea una presunción *juris tantum* de violación a favor del querellante cuando se logre establecer un caso *prima facie*, una vez este pruebe que participó en una actividad protegida y fue subsiguientemente despedido, amenazado o discriminado en el empleo. Al examinar el caso de autos, colegimos que el señor Muñiz no logró establecer un caso *prima facie* de represalia.

De los autos ante nuestra consideración, se desprende que la comunicación por parte del señor Muñiz sobre que no estaría continuando sus labores de Coordinador, no constituyen una actividad protegida por la Ley Núm. 115, *supra*, conforme exige nuestro ordenamiento laboral. Por lo cual, no cumple con el primer criterio esbozado en el derecho anteriormente expuesto.

La alegada actividad protegida, surgió para el 27 de julio de 2021, cuando el apelante comunicó que no continuaría realizando las funciones de Coordinador, ello con relación al exceso de trabajo. El despido del apelante surgió para el 18 de noviembre de 2021. Debemos apuntar que la temporalidad no es el único factor a ser considerado para la determinación de un caso *prima facie* de represalias. Le correspondía al señor Muñiz demostrar elementos adicionales que establecieran un nexo causal entre la actividad protegida —su queja— y la acción adversa tomada por la empresa —el despido—.

A tales efectos, no obra en el expediente prueba alguna aportada por el apelante que demostrara que fue tratado de manera distinta a otros empleados, que

existiera un patrón de conducta antagónica en su contra, o alguna otra evidencia que justifique instar su causa de acción por represalias en virtud de la Ley Núm. 115. En conclusión, el apelante no logró demostrar que el despido constituyó un acto de represalia.

Por lo antes expresado, concluimos que no erró el foro primario al desestimar sumariamente las reclamaciones sobre acoso u hostigamiento laboral y represalias, por lo que, los señalamientos de error no fueron cometidos.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones